545 So.2d 1208 (1989)
STATE of Louisiana
v.
David FLEURY.
No. KA 7365.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1989.
Harry F. Connick, Dist. Atty., Sandra Pettle, Asst. Dist. Atty., New Orleans, for plaintiff.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant.
Before LOBRANO and ARMSTRONG, JJ., and PRESTON H. HUFFT, J. Pro Tem.
ARMSTRONG, Judge.
Defendant, David Fleury, was convicted of two counts of aggravated rape, two counts of aggravated crime against nature, one count of armed robbery, and one count of aggravated burglary. He was sentenced to serve a term of life imprisonment at hard labor for each of the two rapes, ninety-nine years at hard labor on the armed robbery count, and fifteen years at hard labor on each of the two counts of aggravated crime against nature. All of these sentences were to be served without benefit of parole, probation, or suspension of sentence. Defendant was adjudicated a fourth offender on the count of aggravated burglary and was sentenced to serve five hundred years at hard labor without benefit of probation or suspension of sentence. All of the sentences were to run consecutive to one another. Defendant now appeals raising three assignments of error.
The crimes for which defendant was convicted were perpetrated against two female victims at their respective uptown apartments on the nights of October 30th and November 30, 1985. The defendant entered one apartment while the victim slept, the other while the victim was away. He surprised the women, methodically tied and untied them, and led them around to various rooms where he sexually assaulted *1209 them numerous times. He also stole one victim's automobile.
The defendant was arrested at 1:30 a.m. on December 28, 1985, in the 6500 block of Fleur de Lis Boulevard. He was in possession of three knives, a screwdriver, a woman's stocking, two pieces of rope, and gloves. Further investigation linked him to the crimes for which he was eventually charged and convicted.
During the investigation both victims identified several items which had been either found on defendant's person or seized from his apartment. One victim picked the defendant's photograph out of a line up. The other victim could not make an identification because the perpetrator's face had been covered by a mask during the attack.
All of this evidence was introduced at trial. In addition, a California woman testified that the defendant committed similar crimes against her in a similar ritualistic and methodical manner. The defendant had been convicted for those offenses in California, had served time in prison, and had been paroled. Both New Orleans victims testified in detail about their ordeals.
Frank Fischer, defendant's fellow inmate in the Orleans Parish Community Correctional Center, related the details of the crimes as told to him by the defendant. The defendant informed Fischer of the names of the victims, described how he had entered their apartments, and detailed the various sexual assaults committed against the women. The facts as related by Fischer closely matched the facts testified to by the victims. Fischer was what is commonly referred to as a "jailhouse lawyer." He was somewhat versed in criminal law and had filed petitions on his own behalf in state and federal courts. He was serving a life sentence for first-degree murder and had been in prison for nine years. According to the defendant and another inmate, Fischer held himself out as having been a licensed attorney, still retaining his license to practice law in some states. Both at a pre-trial hearing and at trial, the trial court refused to recognize the existence of an attorney-client privilege under La.R.S. 15:475 between the defendant and Fischer.
On appeal defendant first claims that the trial court erred in not recognizing a privilege between himself and Fischer which would have allowed him to invoke the privilege and prevent the disclosure of the communications he made to Fischer.
La.R.S. 15:475 provides that:
"No legal advisor is permitted, whether during or after the termination of his employment as such, unless with his client's express consent, to disclose any communication made to him as such legal adviser by or on behalf of his client, or any advice given by him to his client, or any information that he may have gotten by reason of his being such legal adviser."
Frank Fischer is not an attorneythis is not disputed. Defendant argues, however, that the attorney-client privilege should apply because Fischer held himself out as an attorney and the communications were made to him based on that representation and for the purpose of seeking legal advice. Defendant frames the issue as "whether the attorney-client privilege of La.R.S. 15:475 should be interpreted as requiring that the person consulted actually be a lawyer (an objective test) or whether the belief by a defendant that he is consulting a lawyer (a subjective test) is sufficient." Defendant submits that the privilege should be available if the person expressing confidences "reasonably believes" that the person consulted is a lawyer, though in reality he is not.
It is not necessary that we decide the legal issue of whether the objective or subjective test is proper. Based on the facts of this case, the defendant cannot assert the privilege under either test. Clearly, Fischer is not a licensed attorney and therefore application of the objective test would preclude his assertion of the privilege. For the following reasons, we also hold that, even under a subjective test, defendant could not assert the privilege.
Defendant first contacted Fischer after observing him speaking to other inmates and being told that he was a "jailhouse lawyer." According to the defendant, *1210 Fischer told him that he had been a licensed attorney prior to his arrest and conviction, and "still retained that license in some states." However, defendant admitted that he "was not sure whether that was true or not." Yet the defendant maintains that he confided in Fischer because he was an attorney and was assisting him in reference to the charges pending against him. Defendant spoke with Fischer numerous times and admitted giving the information to him freely and voluntarily. Defendant claimed that Fischer wrote two letters for him to his attorneyhe mailed one but not the other.
Another fellow inmate, Kenneth Killion, convicted of four counts of aggravated rape, one count of aggravated crime against nature, and four counts of aggravated burglary, testified that Fischer made it known on the prison tier that he had been an attorney and would help inmates with their cases for a fee. He filed a writ for Killion with the Louisiana Supreme Court, charging him ten dollars for this service. Fischer informed Killion that whatever he discussed with him would be kept confidential.
Fischer testified that after his conviction he began studying law to help represent himself. He admitted that he filed quite a few petitions in federal court and applications for post-conviction relief in state court. He also admitted to having had a reputation as a jailhouse lawyer but did not say that he had informed others that he was, or had ever been an attorney. He said he wrote a letter to defendant's attorney because defendant asked him to. Fischer said that in the letter he suggested that the witnesses against the defendant, (presumably the two victims here and the one who came from California to testify) be sequestered. He made this suggestion because the defendant mentioned to him that at a motion hearing witnesses had been in the same common area in or outside of the courtroom. The primary purpose for writing the letter, according to Fischer, was that he could better express what defendant wished to communicate to his attorney.
The attorney-client privilege is the oldest of the privileges for confidential communications known to common law. Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); State v. Green, 493 So.2d 1178 (La.1986). It is intended to promote full disclosure from the client to his attorney as to all relevant facts and information related to the subject matter of the representation. State v. Green, supra.
"[T]he privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete ... It is worth preserving for the sake of a general policy, but is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 Wigmore, Evidence, § 2291 (McNaughten rev. 1961). (footnote omitted)
In State v. Spell, 399 So.2d 551 (La. 1981), the Louisiana Supreme Court held that a communication made by Spell, a prison inmate, to a fellow inmate assigned to the law library, was not subject to the attorney-client privilege. That inmate helped other prisoners with their legal problems, "by writing letters, preparing pleadings, and otherwise giving them whatever advice he could." Spell contended the inmate had been acting as an attorney. But, apparently, the record reflected that the inmate did not hold himself out as an attorney, and that the defendant knew he was not an attorney, only "a fellow inmate in the prison."
In the instant case, the defendant admitted he was not sure whether he believed Fischer's boast that he was or had been an attorney. Defendant could have easily inquired into this matter. He had a court-appointed attorney of record and could have requested that she look into this. In fact, defendant's counsel was aware that the person who wrote the letter for defendant was holding himself out as an attorney. Fischer was a convicted murderer who had been incarcerated for the past nine years at the time of trial. While it is unfortunately *1211 not unknown for attorneys to be convicted of crimes and sentenced to prison, under these circumstances we do not feel that the defendant could have "reasonably believed" that Frank Fischer was an attorney.
For these reasons we find that the trial court properly held that La.R.S. 15:475 did not provide defendant a privilege which he could invoke to prevent Frank Fischer from testifying.
By defendant's next assignment of error he contends that the trial court erred in adjudicating him a fourth offender under La.R.S. 15:529.1. Defendant claims the State did not prove that the defendant was represented by counsel at the time he entered a plea of guilty in California in 1969 to one of the predicate offenses.
In State v. Holden, 375 So.2d 1372 (La. 1979), the Louisiana Supreme Court held that in order to use a guilty plea entered prior to December 8, 1971, as a predicate conviction for multiple bill purposes, the State must show proof of a defendant's conviction and evidence that he was represented by counsel.
In the case at bar the State introduced the docket sheet from the case in question. At the top right-hand corner of the docket master sheet is a space for the names of the attorneys for the State and the defendant. "PD" was the attorney for defendant. The docket master sheet (actually two pages), contains entries, most of them handwritten, dating from October 30, 1969 to January 26, 1972. There is no indication on the docket master that "PD" was present at any of the proceedings in this case, including defendant's plea of guilty entered on December 24, 1969. The initials "PD" indicate to us that the defendant's counsel of record was a public defender.
The State cites the case of State v. Cressy, 440 So.2d 141 (La.1983). In Cressy a minute entry from the defendant's pre-1971 guilty plea did not indicate whether the defendant's counsel was present when the plea was entered. The court concluded, however, that counsel had been present because the minute entry from defendant's sentencing, which occurred immediately after the guilty plea, indicated that counsel had been present at the time of sentencing.
We find that the rationale used by the Cressy court does not apply to the facts of this case. The notation on the docket master sheet is insufficient to show that the defendant was represented by counsel when he entered a plea of guilty in 1969. Therefore, we must reverse defendant's adjudication-conviction as a fourth offender. It is not disputed by defendant that sufficient evidence was presented by the State to adjudicate him to be a third offender under La.R.S. 15:529.1. Accordingly we will remand this case to the trial court for the re-sentencing of defendant as a third offender.
Our disposition of defendant's second assignment of error renders his third and last assignment of error moot.
For the foregoing reasons we reverse the defendant's conviction as a fourth offender and vacate the sentence imposed on him as a fourth offender. In all other respects we affirm the convictions and sentences of defendant. We remand this case for resentencing as a third offender in accordance with the views expressed herein.
AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, REMANDED.