711 So.2d 808 (1998)
STATE of Louisiana, Appellee,
v.
Donald Ray THOMAS, Appellant.
No. 30490-KA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1998.
*810 Louisiana Appellate Project by Richard J. Gallot, Jr., Ruston, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Karen Avery and Catherine Estopinal, Assistant District Attorneys, for Appellee.
Before MARVIN, C.J., and NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Defendant, Donald Ray Thomas, urges eight assignments of error in appealing his jury conviction of aggravated rape, La. R.S. 14:42. We affirm.

FACTS
After receiving an anonymous call reporting that JT had been the victim of sexual abuse, Bill Bamonte, an investigator for the Caddo Office of Community Services, Division of Child Protection, conducted an interview with the six-year-old at her school on April 9, 1996. The young girl told him that her father, Donald Ray Thomas, on two separate occasions put his finger into her vagina and in another incident "tried to put his private part in her private part" and "had put her mouth on his private part," even with her mother in the room smoking a cigarette. The next day, the upset child recanted the statement, informing Bamonte that her father said she would go to jail if she continued to talk to the investigator and instructed her to say, among other things, that "she must have been confused." Later, on April 15, 1996, to Caddo Parish Sheriff's investigator Mike Christian, the child reiterated her original statement.
Christian had previously interviewed JT's parents on April 11, 1996. The mother acknowledged being aware of both episodes, occurring six months to a year prior to her statement, and being present in the room as the child stated. The father initially denied having any sexual contact with his daughter but, when confronted with contrary statements from his wife and JT, finally admitted trying to put his finger in the six-year-old's vagina, fondling her genitals, and attempting on one occasion to have sex with the child when she got into bed with him and his wife.
The authorities arrested the father and charged him with aggravated rape. Upon grand jury indictment, the matter proceeded to trial on March 17, 1997. After conviction, the court imposed a life sentence.

DISCUSSION

SUFFICIENCY OF EVIDENCE
Defendant complains, in his second assignment of error, that the trial court denied his Motion for Post-Verdict Judgment of Acquittal challenging the sufficiency of the evidence to support the aggravated rape verdict.
The criterion for evaluating sufficiency is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational fact-trier could find that the state proved all elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Washington, 597 So.2d 1084 (La.App. 2d Cir.1992). That standard, initially enunciated in Jackson and now legislatively embodied within La.C.Cr.P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Perry, 612 So.2d 986 (La.App. 2d Cir.1993).
Of course, it is always the function of a judge or jury to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir. 1992), writ denied, 617 So.2d 905 (1993). Where a trier of fact has made a rational determination, an appellate court should not disturb it. Id.; State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (1992). Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of *811 one witness, if believed by the fact-trier, is sufficient support for the requisite factual conclusion. State v. Thomas, supra.
In the present matter, the crime of aggravated rape required proof by the state that defendant engaged in anal or vaginal sexual intercourse with the victim, then less than twelve years old. Such acts would be deemed without the child's lawful consent due to her tender age. Emission is not necessary and any sexual penetration, however slight, is sufficient to complete the crime. La. R.S. 14:41, 14:42. Arguing that the evidence, due to the lack of proof of penetration, would "at most ... prove an attempt by [a]ppellant to engage in sexual intercourse with his daughter," Thomas urges this court to modify the verdict as authorized by La.C.Cr.P. art. 821(E).
While the medical examination did not establish that the child had been penetrated, both testifying physicians noted that the absence of such physical evidence does not mean that penetration did not occur because of the elastic and quick-healing tissues involved. More importantly, the evidence of penetration in this case comes from the unequivocal testimony of JT, who discussed two of the incidents with a clarity exceeding her six years. Concerning the episode where her mother remained in the room, she stated, "[m]y dad had sex with me," while further indicating that he touched her privates with "his hands and his privates." When asked if the encounter hurt, the child answered in the affirmative.
Stating that in the second incident her father called her into her brother's bedroom, the child twice testified that defendant "stuck his privates in mine" and told her not to tell her mother. Given that the physical evidence does not unresolvably contravene the victim's statements, her testimony alone is sufficient to establish penetration and the other elements of the offense. Cf. State v. Rives, 407 So.2d 1195 (La.1981); State v. Abbott, 29,497 (La.App.2d Cir. 06/18/97), 697 So.2d 636. The evidence thus sufficiently supports the jury's conclusion that, beyond a reasonable doubt, defendant fully accomplished the aggravated rape of his six-year-old daughter. This assignment of error is without merit.

ADMISSIBILITY OF STATEMENT
In assignments one and three, defendant maintains that the trial court erroneously accepted into evidence his statement made to Investigator Christian. Thomas argues that his admissions resulted from "subtle, psychological coercion" and deprived him of his right to have an attorney present during questioning. In essence, these same grounds had been urged earlier in a motion to suppress and a motion for new trial, both denied by the district court.
Of course, before a confession can be introduced into evidence, the state faces the burden of showing the statement to have been made freely and voluntarily, and not formulated under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La.C.Cr.P. art. 703(D); La. R.S. 15:451; State v. Comeaux, 93-2729 (La.07/01/97), 699 So.2d 16. The test for voluntariness involves a review of the totality of the circumstances surrounding the statement, and any inducement offered is but one factor in that analysis. State v. Lavalais, 95-0320 (La.11/25/96), 685 So.2d 1048, 1053, cert. denied ___ U.S. ___, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997).
Although promises or inducements will void a defendant's confession, State v. Serrato, 424 So.2d 214 (La.1982); State v. Jackson, 414 So.2d 310 (La.1982), a mild exhortation to tell the truth, or an indication that if the defendant cooperates the officer will "do what he can" or "things will go easier," will not negate the voluntary nature of a confession. State v. Petterway, 403 So.2d 1157 (La.1981); State v. Jackson, 523 So.2d 251 (La.App. 2d Cir.1988), writ denied, 530 So.2d 565 (La.1988), and authorities therein. The trial court's ruling concerning voluntariness is afforded great weight and will not be disturbed on appeal unless clearly unsupported by the evidence. State v. Cousan, 94-2503 (La.11/25/96), 684 So.2d 382.
Defendant first complains that the questioning, conducted by three investigators, consumed about an hour and forty minutes. *812 Without specifying any facts denoting coercion, defendant's present complaint regarding the number of questioners does not sufficiently demonstrate involuntariness. Insofar as the length of the examination, the record reflects that Thomas gave progressively more incriminating bits and pieces of his story as the investigators continued questioning him, thus justifying the time involved. Hence, the duration of the process is not attributable to coercion, but stemmed instead from defendant's slowly increasing willingness to talk.
Defendant next seeks to show that his inculpatory statements were induced by "repeated assertions by law enforcement officers that [his] wife and daughter had already confirmed that sexual acts had taken place," by attempts from the officers to analogize his situation to that of an alcoholic, and by an impermissible promise playing on his sympathy. We find no merit in these contentions.
In first denying any wrongdoing, Thomas claimed an inability to remember. During those disavowals, however, Thomas never suggested that he wanted to stop the interview, indicating instead his desire to "get this out in the open, find out what's going on." His attempts to recall the living room incident prompted the officers to remind him of his wife's and child's assertions, especially after Thomas said, "What I want to do is ... to remember if I did anything...." Indeed, he offered at one point, "Is there anything else we could do to make me remember?" Likewise, his earlier admissions concerning two other improper acts with the child arose without any coercion.
Regarding the alcoholic analogy, the officers explained that if Thomas had a problem, as in the case of an alcoholic, he needed to get help. Defendant agreed, but at no time did the comparison precipitate an inculpatory statement.
Anent the claim of an impermissible promise, the relevant assertion occurred after defendant admitted certain inculpatory conduct, causing Deputy Christian to respond:
I need to be able to tell this little girl that daddy admitted his mistake and to be able to help this girl start psychologically dealing with what happened to her and maybe try to get you some help. That's what I want to start doing. We havewe have to have a point to start at.
Characterizing this statement as an impermissible promise that "played" on his sympathy, defendant argues that the investigator did not tell him that an admission to rape would cause him to be found guilty of aggravated rape and sentenced to death or imprisonment.
Yet, in context, the investigator explicitly told the defendant to tell the truth, if he remembered, and not to confess to a serious crime unless true. Not only that, immediately after the above-described statement from Deputy Christian, the following exchange occurred:
Defendant: Am I going to jail?
Christian: Yes, sir, I'm afraid you are. You're going to jail. I don't have a whole lot of choice in that.
Defendant: Yes, sir.
Thus, although telling defendant that he could get help if he told the truth, the investigator did not promise any control over the punishment for the crimes or that the punishment would be lessened if Thomas confessed. Hence, the colloquy as a whole shows defendant's statements to have been freely and voluntarily made in conformity with La. R.S. 15:451.
Thomas further contends that the officers violated his right to counsel. Beyond proving a statement to be voluntary, of course, the state must show that a defendant who confesses during a custodial interrogation has first been advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Likewise, the police may not continue to question a subject who invokes the Miranda protections. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
During questioning, Christian so advised Thomas and asked whether he wanted to waive these rights. Now, on appeal, defendant's contentions are grounded in the subsequent exchange:
Christian: Well, that'sI can't discuss that with you until you decide if you're *813 gonna talk to me or not. If you're gonna talk to me, then I can'twe can't go into anywe can't go any further with it.
Defendant: Well, I'm gonna talk about it, try to make it understood that I ain't done nothing.
* * * * * *
Defendant: I'd like to get this out in the open, find out what's going on.
Christian: Well, we would too. That's what we're here for.
Defendant: Thank you. But do Ido I need a lawyer? I mean, what's going
Christian: That's up to you. If you think you need a lawyerI can't tell you if you're gonna need a lawyer or not. If you think you need a lawyer, then if you request a lawyer, then we'll endI mean, we'll end theif you don't want to talk to us without a lawyer, thenthen we can't talk to you any further without a lawyer. I mean, that's the law. That's the reason why it says here you have a right to talk to a lawyer and have him present, okay? If you would rather have an attorney present before you make any statements to us, then that's your right.
Defendant: Yeah, but I haven't done anything.
Although neither the defendant nor the investigator said anything further about counsel, Thomas now argues that the officers should have stopped questioning him once he raised his right to counsel. Further, citing Edwards, supra, he reasons that his statement should not have been admitted at trial. We cannot concur.
As indicated in Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), the accused in such circumstances must unequivocally request counsel:
Invocation of the Miranda right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." ... But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning....
Rather, the suspect must unambiguously request counsel. As we have observed, "a statement either is such an assertion of the right to counsel or it is not." ... Although a suspect need not "speak with the discrimination of an Oxford don," ... he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, Edwards does not require that the officer stop questioning the suspect.
at 457-58, 114 S.Ct. at 2355 (citations omitted).
In the case sub judice, defendant's vacillating references to counsel fail to meet the objective requirement pronounced in Davis. Conversely, in response to the inquiry "Do I need a lawyer," Christian correctly informed the arrestee that questioning would cease if he elected to obtain counsel. Thereafter, for whatever reason, Thomas elected to talk to the investigators. Accordingly, with no violation of Edwards having been demonstrated, both of these assignments lack merit.

CLOSED CIRCUIT TELEVISION
In his fourth assignment, defendant urges that the introduction of JT's testimony via closed circuit television violated his constitutional right of confrontation, absent a "specific finding that ... live, face-to-face testimony would be injurious to the child."[1]
At the hearing on its motion to have the child testify by closed circuit television, the state presented Bruce McCormick, Ph.D., an expert in school and child psychology. Dr. McCormick testified that he asked JT an *814 array of questions, while interviewing her for purposes of determining whether "she could [testify] completely and accurately in open court with the alleged perpetrators present." JT remained reluctant to speak about the sexual abuse and seemed relieved when he did so for her. Based upon these firsthand discussions, the psychologist opined that JT would suffer "serious emotional distress" if forced to testify in open court against her father. The following exchange then occurred:
Q: And also in your expert ... opinion..., would you say that without being televised simultaneously when she testifies that she could not reasonably communicate her testimony to the Court?
A: If I understood your question right the answer is no. I don't know that she has to be televised to accurately provide her testimony. I do think that if she, if her testimony were provided in open court with alleged perpetrators present she would not be able to give as complete testimony. She may be very complete whether it's televised or not, you just wouldn't have a record of it.
Subsequently, in response to a question from defense counsel, Dr. McCormick clarified his opinion by stating that JT's testimony in the presence of the alleged perpetrator could be an "issue" whereas the presence of a camera would not be. When asked why televised testimony would be important for JT, the witness pointed to the relative emotional comfort of the child, the fact that she probably would need to say some unfavorable things about her caregivers, and that the physical presence of the parent or could have a profound effect on how the child responded. Dr. McCormick also indicated that the child's spontaneity, memory recall, and the ability to be complete and accurate would likely be compromised.
Cumulatively, the psychologist's expressions satisfy La. R.S. 15:283. See also State v. Wright, 96-786 (La.App. 3rd Cir. 02/19/97), 690 So.2d 850. His extensive testimony as a whole shows that, if JT had been forced to testify before her father about the repulsive events, she would have been severely distressed and unable to communicate reasonably. Accordingly, this assignment of error is without merit.

VOIR DIRE
Defendant next complains that the trial court allowed the state to ask voir dire questions regarding the lack of physical evidence in the case. This assignment is based upon the following exchange during the examination of one prospective juror:
Q: So you can listen to the child but you can also listen to other evidence?
A: Yes.
Q: Now I'm going to tell you right now there is no physical evidence.
The trial court then overruled a defense objection.
Voir dire examination is designed to test the impartiality of prospective jurors and may not serve to pry into their opinions concerning evidence to be offered at trial. State v. Corbin, 285 So.2d 234 (La.1973). Even so, the state's questioning in the present case did not seek to determine how the prospective juror would vote based on the neutral physical evidence, but instead simply sought to probe whether the veniremember could appropriately weigh testimony alone in the absence of corroborating physical evidence. This is reflected by the prosecutor's subsequent question:
There is no physical evidence on the child that a rape occurred. So you are going to have to listen to other things and make a decision. Is that going to affect you, ma'am, because we have no physical evidence to say this is what happened?
Thus, with the inquiry not exceeding the permissible scope of voir dire, this assignment of error lacks merit.

CUMULATIVE TESTIMONY
In his sixth assignment, defendant argues that the court erred in overruling his objection to cumulative testimony from JT's foster mother, Cathy Cox. The prosecutor introduced the testimony, thusly:
Your Honor, the State at this time would like to call witnesses to show prior consistent statements. The code does say that *815 that is allowed when the defense attorney implies or actually says that the child has either fabricated the story or recently come up with the story. The State would allege that during his voir dire he brought that up about the child lying or that a child could have things suggested to him and the State would like to bring witnesses forward to show that the child has consistently said what she testified to in open court just minutes ago.
When defendant objected on hearsay grounds, asserting that the testimony did not qualify as a first report of rape and also would be cumulative, the court overruled the objection. The prosecutor then elicited that JT had told the witness that her father had sex with her on two occasions.
The state did not offer Cox's statements to prove that the sexual acts occurred, but merely to show that the child had made prior statements consistent with her trial testimony. Pursuant to La. C.E. art. 801(D)(1)(b), the testimony did not constitute hearsay and is not cumulative. Nor did the state offer the statements as the initial report of a rape. Cf. La. C.E. art. 801(D)(1)(d). Of course, a defendant is limited on appeal to those arguments raised at trial, otherwise the trial court would be deprived of the opportunity to make the proper ruling and prevent or cure any possible error. State v. Jackson, 450 So.2d 621 (La. 1984). This assignment of error is without merit.

TESTIMONY OF DEPUTY CHRISTIAN
Defendant next complains that the trial court admitted testimony from Deputy Christian regarding the extent and nature of his contact with JT.
Christian stated that he met with JT and the prosecutor several times to counter the child's fears that the police would arrest her and put her in jail if she told the truth. The prosecutor then asked:
Q: When you were present during the interviews that I conducted did [JT] ever say anything different from what she said initially?
Mr. Goins: Objection, Your Honor, getting into stuff we really don't have any ability to verify and it's irrelevant.
Ms. Avery: I'm trying to find out if the child has given consistent statements throughout the time.
The Court: Overruled.
* * * * * *
Q: Did she ever say anything different?
A: During the interview that you conducted, it was the incident as it occurred was the same. She would not say some of the things I believe when I sat with you, she was more embarrassed then. I think time had passed on and she was more embarrassed to talk in front of me. She wouldn't say some of the things that she said in the interview that I recorded.
Defendant assails the testimony as irrelevant, an impermissible attempt to bolster the victim's testimony, and a more-prejudicial-than-probative effort to show JT's truthfulness.
The testimony in question, however, relevantly rebutted the defense's cross-examination of JT designed to show she had made prior inconsistent statements to the investigators. Moreover, a nonexpert may offer his opinion so long as it is both rationally based on the perception of the witness and helpful to the determination of a fact at issue. La. C.E. art. 701. Here, testifying from personal observation, Deputy Christian permissibly offered his opinion that the child's statements had been similar. Contrary to defendant's contentions, the officer did not express an opinion, in contravention of La. C.E. art. 608, that the victim testified truthfully. In light of the extensive opportunity given defendant to cross-examine all parties involved, the trial court did not err in allowing the witness to testify as indicated here.

ERROR PATENT
In reviewing the record for error patent, we observe that the trial judge failed to inform Thomas that the prescriptive period for post-conviction relief begins to run from the finality of conviction. See La. C.Cr.P. art. 930.8. Thus, the district court is directed to send appropriate written notice to *816 Thomas within ten days of the rendition of this opinion and then file, in the record, written proof that defendant received such notification. We have found no other errors patent.

CONCLUSION
Accordingly, for the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Under the provisions of La. R.S. 15:283, such closed circuit televising may occur upon expert testimony that the sexually abused child would likely suffer serious emotional distress if forced to give testimony in open court and that, without such televised testimony, the victim cannot reasonably communicate his or her testimony to the court.