839 So.2d 1183 (2003)
STATE of Louisiana
v.
Lavelle MYERS a/k/a Lavelle Coleman.
No. 02-1296.
Court of Appeal of Louisiana, Third Circuit.
March 5, 2003.
*1185 G. Paul Marx, Attorney at Law, Lafayette, LA, for Defendant/Appellant, Lavelle Myers, a/k/a Lavelle Coleman.
Joseph P. Beck, II, District Attorney, Colfax, LA, for Appellee, State of Louisiana.
Court composed of JIMMIE C. PETERS, MARC T. AMY, and MICHAEL G. SULLIVAN, Judges.
JIMMIE C. PETERS, Judge.
The defendant, Lavelle Myers, also known as Lavelle Coleman, was charged by grand jury indictment with second degree murder, a violation of La.R.S. 14:30.1. A jury convicted him of the charge, and the trial court sentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant has appealed his conviction, asserting six assignments of error. For the following reasons, we affirm the conviction in all respects.

DISCUSSION OF THE RECORD
After being charged with his brother's murder, the defendant entered a plea of not guilty and not guilty by reason of insanity. At the request of the defendant, the trial court appointed a sanity commission, consisting of Drs. Marshall E. Belaga and Vijaya L. Boppana. The trial court held a hearing on the sanity issue on April 29, 2002, and, after the evidence was presented, concluded that the defendant was able to distinguish right from wrong, to understand the proceedings against him, and to assist in his defense. The three-day trial commenced on June 17, 2002, with the jury returning its verdict on June 19, 2002.
The defendant and the victim, John Coleman, are brothers, and, on May 20, 2001, they were living together in a house trailer located north of Pollock, Louisiana, in Grant Parish. At approximately 3:30 p.m. on that day, three parish law enforcement officers went to the trailer to investigate a report that a corpse had been found in the residence. Upon arrival, they found no evidence of forced entry into the residence and discovered the victim's decapitated body lying in a bathtub. Not only had his head been severed from his torso, but his genitalia had been severed as well. The victim's body appeared to have been washed, as there was very little blood in the bathtub. The investigating officers subsequently discovered the severed genitalia beneath the victim's left leg, but they did not find the severed head at the scene.
Grant Parish Sheriff's Detective Jody Bullock collected blood samples in the bathroom where the victim's body was located, in the hall leading from the bathroom to the victim's bedroom, and in the bedroom itself. While examining the bedroom, Detective Bullock initially observed that the bed appeared to be made up. However, when he removed the top cover, he found that the bed contained no linens.
*1186 Detective Bullock then lifted the mattress on the bed and observed blood stains on the underneath side as if it had been "flipped" over. Additionally, he observed blood splatters on the bedroom window blinds and collected a spent .22-caliber shell casing from the bedroom floor. During the course of his investigation, Detective Bullock walked to the defendant's bedroom where he discovered a loaded Marlin.22-caliber rifle behind the bedroom door. According to Detective Bullock, the rifle appeared to have been wiped clean, but a closer inspection revealed what appeared to be blood splatters on the lens of the scope mounted on the rifle. Subsequent scientific testing established that the blood found on the scope of the rifle matched that of the victim and that the spent .22-caliber shell found in the victim's bedroom had been fired from the Marlin .22-caliber rifle found in the defendant's bedroom.
Two days later, on May 22, 2001, Detective Bullock recovered the victim's severed head from a dumpster near Georgetown, Louisiana. The victim had been shot twice in the head at close range by a small-caliber weapon. Additionally, he recovered, from the dumpster, a pillow and sheets with substantial amounts of blood on them, as well as some underwear and socks.
The defendant was present at the trailer when the deputies arrived on May 20. On that day, he gave two separate statements to the members of the investigating team. At approximately 4:26 p.m., the defendant gave a statement to Grant Parish Sheriff Deputy John T. Montgomery, one of the first deputies to arrive on the scene. Deputy Montgomery testified concerning the fact that he took the statement, but did not elaborate on its content. At 11:00 p.m., Deputy Montgomery and Detective Bullock questioned the defendant a second time. According to Detective Bullock, in this statement, the defendant asserted that he and his brother had been involved in a physical altercation sometime during the day and that the defendant had struck the victim, rendering him unconscious. Detective Bullock testified that the defendant informed him that he then panicked and telephoned unidentified individuals to come and "fix his problem." Initially, the defendant suggested that he agreed to pay the unnamed individuals $1,000.00, but later in his statement, it became unclear whether he agreed to pay anything. In any event, the defendant was unable to provide the officers with names or telephone numbers of the alleged individuals. Detective Bullock testified that after the statement, he urged the defendant to tell the truth. According to the detective, the defendant responded that he would if he could be guaranteed that he would be placed in a mental hospital.
When the deputies first arrived at the trailer on May 20, Johnny W. Moss, a step-cousin to the defendant and his brother, was also present. He testified that he had been called by the defendant to come to the trailer and that, when he arrived, the defendant informed him that the victim was in the bathtub. Mr. Moss was aware that the defendant and his brother had quarreled regularly before the May 20 homicide. According to Mr. Moss, the victim had recently told him that he wanted the defendant to move out. On another occasion, according to Mr. Moss, the defendant had stated that if the victim "didn't let him alone, he was going to cut his head off."
The state presented evidence of two other incriminating statements made by the defendant after his arrest for his brother's murder. The first occurred on October 2, 2001, when Sergeant Chris Woodard of the Grant Parish Sheriff's Office allowed a trustee to take a juvenile for a tour of the jail in an effort to impress *1187 upon the juvenile the consequences of criminal behavior. Sergeant Woodard trailed behind the trustee and the juvenile, and, as they approached the defendant's cell, the trustee asked the defendant to tell the juvenile why he was incarcerated. According to Sergeant Woodard, the defendant responded that he had cut off a man's head and genitals.
The other statement was made to Johnny Ray Desselle, who shared a cell in the parish jail with the defendant for a period of time before trial. According to Mr. Desselle, the defendant told him that he and his brother had gotten into an altercation over some checks he had written for crack cocaine and that the victim had wanted him to move from the trailer. Mr. Desselle testified that the defendant told him that he had shot his brother as he lay in bed and that he had dragged the body to the bathtub where he "cut him like he did a deer."
Susan Garcia, a New Orleans, Louisiana forensic pathologist, performed an autopsy on the victim. According to Ms. Garcia, the victim died from the gunshot wounds to the head and not the decapitation. She testified that the shots were fired at contact range and that the entry holes were consistent with small-caliber projectiles. She also noted that the body contained no defensive wounds, indicating to her that he was shot while incapacitated by intoxication or sleep.
On appeal, the defendant raises six assignments of error:
1. The trial court erred in that the question of capacity to proceed was not subject to a full hearing, where over defense objection, one of the commission members did not testify and only submitted a written report.
2. The trial court erred in allowing inadmissable opinion testimony from an investigating officer, which testimony was highly prejudicial and not based on anything other than conjecture.
3. The trial court erred in that it did not suppress the testimony of an `inmate counsel' who secured information from the appellant on the pretense of `representing' him before the courts of this state and there fore [sic] in violation of the appellant's privilege to confidentiality of communications with his legal representatives.
4. The evidence is insufficient to support the verdict of guilty of second degree murder.
5. The trial court erred in that it refused to include the penalty for manslaughter when charging the jury as to that responsive verdict.
6. The indictment is a nullity because the trial court selected the grand jury foreperson in contravention of article 413 B of the Louisiana Code of Criminal Procedure.

Assignment of Error Number 4
The defendant's fourth assignment of error challenges the sufficiency of the evidence presented by that state. We will consider if first because, as the supreme court has explained:
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have *1188 been proved beyond a reasonable doubt. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.
State v. Hearold, 603 So.2d 731, 734 (1992) (footnote omitted).
Louisiana Revised Statute 14:30.1 provides, in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm....
Although the defendant plead not guilty and not guilty by reason of insanity, the jury had to determine whether the state established the elements of second degree murder before considering the question of the defendant's mental capacity. State v. Marmillion, 339 So.2d 788 (La.1976).
There is no question that a specific-intent killing occurred in this case. The defendant simply argues that the evidence is not sufficient to establish beyond a reasonable doubt that he killed his brother. Applying the Jackson standard and reviewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have reasonably concluded that all the elements of the offense were established beyond a reasonable doubt. Therefore, we find no merit in this assignment of error.

Assignment of Error Number 1
The defendant questions the procedural correctness of the sanity hearing in this assignment of error. Specifically, the defendant asserts that the trial court did not hold a full sanity hearing because it accepted the report of one of the doctors without hearing his testimony.
At the April 29, 2002 hearing, the state filed the written report of Dr. Belaga dated April 24, 2002, and rested. Counsel for the defendant immediately objected to the introduction of the report in particular and the proceedings in general. His general objection was based on the fact that the other member of the sanity commission, Dr. Boppana, was not present. The trial court overruled these objections, and the defendant called Dr. Belaga to the stand for cross examination. In rendering its ruling on the sanity issue, the trial court had both Dr. Belaga's report and his testimony to consider.
Louisiana Code of Criminal Procedure Article 647 provides:
The issue of the defendant's mental capacity to proceed shall be determined by the court in a contradictory hearing. The report of the sanity commission is admissible in evidence at the hearing, and members of the sanity commission may be called as witnesses by the court, the defense, or the district attorney. Regardless of who calls them as witnesses, the members of the commission are subject to cross-examination by the defense, by the district attorney, and by the court. Other evidence pertaining to the defendant's mental capacity to proceed may be introduced at the hearing by the defense and by the district attorney.
(Emphasis added.)
The transcript of the April 29, 2002 hearing establishes that the issue before the trial court was the defendant's capacity to assist his attorneys. On this issue, a defendant is presumed to be sane. La.R.S. 15:432. The defendant bears the burden by a preponderance of the evidence. State v. Burmaster, 97-517 (La. App. 3 Cir. 2/25/98), 710 So.2d 274. However, the fact that Dr. Boppana did not participate by report or testimony does not *1189 in itself suggest an error. Having the burden of proof on the issue before the trial court, the defendant was free to subpoena Dr. Boppana or any other doctor that might be helpful to his case. Furthermore, "[t]he law presumes the defendant's sanity.... While a court is permitted to receive the aid of expert medical testimony on the issue, the ultimate decision of competency is the Court's alone." State v. Bibb, 626 So.2d 913, 927-28 (La. App. 5 Cir.1993), writ denied, 93-3127 (La.9/16/94), 642 So.2d 188 (citations omitted).
In arguing that the trial court erred in considering the testimony of only one of the sanity commission doctors, the defendant cites this court to the holding in State v. Green, 94-0034 (La.App. 4 Cir. 2/16/94), 632 So.2d 1187, writ denied, 94-0672 La.4/29/94), 637 So.2d 464, wherein the trial court appointed only one physician to examine the defendant and determined his competency without holding a contradictory hearing. The fourth circuit concluded that these actions did not comply with the sanity commission membership requirement of La.Code Crim.P. art. 644(A) or the contradictory hearing requirement of La. Code Crim.P. art. 647.
In the matter currently before this court, the trial court appointed two physicians and held a contradictory hearing. Each of the sanity commission doctors evaluated the defendant and submitted reports. We find no authority for the defendant's assertion that the trial court is required either to hear testimony from both doctors or to consider both reports on the record. We find no merit in this assignment of error.

Assignment of Error Number 2
In this assignment of error, the defendant asserts that the trial court erred in allowing Detective Bullock to give his opinion on certain matters. The defendant's argument focuses upon two statements by Detective Bullock given in response to questioning by the state. In the first statement, the state asked Detective Bullock his opinion or theory of what occurred in the victim's bedroom. The officer responded, "The victim was laying in bed. He was shot in bed with a weapon...." Later in his testimony, the state asked Detective Bullock to comment on his understanding of the defendant's statement that he had hired others to kill his brother. In response, Detective Bullock stated that he considered the story "bogus." The defendant timely objected to both questions.
Detective Bullock was not called by the state as an expert witness. Louisiana Code of Evidence Article 701 provides:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
While we have not been directed by the defendant or the state to any jurisprudence directly on point, there are several cases that are analogous.
In State v. Debrow, 34,161 (La.App. 2 Cir. 3/2/01), 781 So.2d 853, writ denied, 01-0955 (La.2/8/02), 807 So.2d 860, writ denied, 01-0989 (La.2/8/02), 807 So.2d 862, writ denied, 01-1055 (La.3/8/02), 810 So.2d 1152, writ denied, 01-0945 (La.3/22/02), 811 So.2d 922, the court held that the lay witness opinion testimony of the two officers was admissible because their testimonies were based on experience and in direct response to attacks by the defendants on the credibility of their testimonies. In State v. Francis, 99-208 (La.App. 3 Cir. 10/6/99), 748 So.2d 484, writ denied, 00-0544 (La.11/13/00), 773 So.2d 156, this *1190 court held that an officer could give his opinion of the reliability of the victim's identification of the defendant. In State v. Thomas, 30,490 (La.App. 2 Cir. 4/8/98), 711 So.2d 808, writ denied, 99-0331 (La.7/2/99), 747 So.2d 8, a deputy's opinion that a child's earlier statements had been consistent was held admissible because the defendant had attacked the child's credibility. In State v. Harvey, 26,613 (La.App. 2 Cir. 1/25/95), 649 So.2d 783, 793, writ denied, 95-0430 (La.6/30/95), 657 So.2d 1026, writ denied, 95-0625 (La.6/30/95), 657 So.2d 1028, an officer's opinion that evidence had been removed from the defendant's home was permissible because it was based on a "natural inference from observed facts." In State v. Converse, 529 So.2d 459 (La. App. 1 Cir.), writ denied, 533 So.2d 355 (La.1988), the court held that it was permissible for a deputy to testify that pieces of wire, like those discovered beneath Converse's jail-cell mattress, could be used as a dangerous instrument and cause injury because the opinion was based on the deputy's observations and experience.
In the present case, unlike Debrow and Thomas, Detective Bullock's credibility had not been put at issue. However, we conclude that the jurisprudence, including the holdings in Debrow and Thomas, establishes that La.Code Evid. art. 701 permits an investigating officer to give opinion testimony in certain instances, including the testimony challenged in the instant case. Detective Bullock did not impermissibly testify concerning the ultimate issue of guilt or innocence; his theory that the victim had been shot while lying in bed did not lead directly to the conclusion that the defendant killed the victim. Furthermore, although the officer's assessment of the defendant's statement constituted an attack on the defendant's credibility, it did not necessarily lead to a conclusion that the defendant was guilty. Therefore, we find no merit in this assignment of error.

Assignment of Error Number 3
On June 11, 2002, the defendant filed a motion to suppress the testimony of Johnny Desselle, asserting that any statements made to Mr. Desselle by the defendant were privileged because Mr. Desselle had been retained by the defendant as an "inmate counsel" to file pleadings on his behalf. After a hearing, the trial court denied the motion. In this assignment of error, the defendant asserts that the trial court erred in not suppressing Mr. Desselle's testimony.
The party seeking to assert a privilege bears the burden of proof. Cacamo v. Liberty Mut. Fire Ins. Co., 99-1421, 99-1903 (La.App. 4 Cir. 10/10/01), 798 So.2d 1210, writ denied, 01-2985 (La.1/25/02), 807 So.2d 844. There exists a lawyer-client privilege in this state. La. Code Evid. art. 506. Under the specifics of that privilege, a lawyer may not disclose a "confidential communication ... made for the purpose of facilitating the rendition of professional legal services to the client." La.Code Evid. art. 506(B). As used in applying the privilege, a lawyer is defined as "a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation." La. Code Evid. art. 506(A)(3).
The defendant acknowledges that Mr. Desselle is not a lawyer, but argues that he should not be allowed to induce the defendant "to provide privileged information under the guise of legal representation and then be unrestrained by the privilege that would apply in every other situation."
The defendant argues that applying the subjective test set forth in State v. Fleury, 545 So.2d 1208 (La.App. 4 Cir.1989), should preclude the use of Mr. Desselle's testimony. However, we find the holding in Fleury to be inapplicable to the matter now before this court. The fourth circuit *1191 in Fleury based its decision on La.R.S. 15:475, which was repealed by 1992 La. Acts No. 376, § 6, effective January 1, 1993. Former La.R.S. 15:475 provided, in part, that "[no] legal advisor is permitted,... unless with his client's express consent, to disclose any communication made to him as such legal adviser by or on behalf of his client...." (Emphasis added.) The Fleury court declined to reach the question of which test, the objective or the subjective, was the proper test under which it should analyze the defendant's attempt to invoke the attorney-client privilege because it concluded that the defendant was unable to assert the privilege under either test. However, the court did nonetheless acknowledge that the objective test is applied if the individual consulted was, in fact, a lawyer and that the subjective test is applied if the client reasonably believed that the individual consulted is a lawyer but, in fact, was not a lawyer. The current definition of "lawyer" found in La.Code Evid. Art. 506(A)(3), which was added by 1992 La. Acts No. 376, § 1, effective January 1, 1993, resembles both the objective test and the subjective test discussed by the Fleury court.
It is undisputed that Mr. Desselle is not a lawyer. Additionally, at the June 13, 2002 hearing on the motion to suppress Mr. Desselle's testimony, the defendant introduced no evidence to establish that he reasonably believed that Mr. Desselle was authorized to practice law. Thus, he failed to establish that Mr. Desselle fell within the statutory definition of "lawyer" pursuant to La.Code Evid. art. 506(A)(3), and we are not inclined to extend the privilege to persons falling outside that definition. Therefore, we find no merit in this assignment of error.

Assignment of Error Number 5
In this assignment of error, the defendant asserts that the trial court erred in refusing to instruct the jury concerning the penalty for a manslaughter conviction when charging the jury regarding verdicts responsive to second degree murder. We find no merit in this assignment of error.
In State v. Cooper, 96-119, p. 12 (La. App. 3 Cir. 7/17/96), 678 So.2d 59, 66, writ denied, 96-2121 (La.1/24/97), 686 So.2d 857, this court explained:
As stated by the Louisiana Supreme Court in State v. Blackwell, 298 So.2d 798, 804 (La.1974), cert. denied, 420 U.S. 976, 95 S.Ct. 1401, 43 L.Ed.2d 656 (1975), "[o]ur law does not require that the judge charge the jury on penalty, nor, however, does it prohibit such a charge." The court ruled that it was within the trial judge's discretion whether to allow the jury to be informed of the penalty either during closing arguments or the jury instructions. The later case of State v. Jackson, 450 So.2d 621, 633 (La.1984), summarized the current status of the law:
When the penalty imposed by the statute is a mandatory one, the trial judge must inform the jury of the penalty on request of the defendant and must permit the defense to argue the penalty to the jury. State v. Hooks, 421 So.2d 880 (La.1982); State v. Washington, 367 So.2d 4 (La.1978). In instances other than when a mandatory legislative penalty with no judicial discretion as to its imposition is required following verdict, the decision to permit or deny an instruction or argument on an offense's penalty is within the discretion of the trial judge. State v. Williams, 420 So.2d 1116 (La.1982); State v. Dawson, 392 So.2d 445 (La. 1980); State v. Carthan, 377 So.2d 308 (La.1979); State v. Blackwell, 298 So.2d 798 (La.1974) (on rehearing), cert. denied, 420 U.S. 976, 95 S.Ct. 1401, 43 L.Ed.2d 656 (1975).
*1192 (Emphasis added).
Therefore, the decision to include the penalties for the charged offense and all lesser included offenses in the jury instructions rested within the exercise of the trial judge's discretion.
We find no abuse of discretion in the trial court's decision not to instruct the jury concerning the penalty for manslaughter. Thus, we reject this assignment of error.

Assignment of Error Number 6
In his final assignment of error, the defendant asserts that the trial court improperly selected the foreperson of the grand jury that indicted him. He argues that the selection was not a random selection as required by La.Code Crim.P. art. 413(B).
Louisiana Code of Criminal Procedure Article 413(A) provides that "[t]he grand jury shall consist of twelve persons plus a first and second alternate for a total of fourteen persons qualified to serve as jurors, selected or drawn from the grand jury venire." Additionally, La.Code Crim.P. art. 413(B) provides:
The sheriff or in Orleans Parish the jury commissioner shall draw indiscriminately and by lot from the envelope containing the remaining names on the grand jury venire a sufficient number of names to complete the grand jury. The envelope containing the remaining names shall be replaced into the grand jury box for use in filling vacancies as provided in Article 415. The court shall cause a random selection to be made of one person from the impaneled grand jury to serve as foreman of the grand jury.
(Emphasis added.)
The trial court held a hearing on the defendant's motion to quash the grand jury indictment on June 13, 2002. At that hearing, the trial court acknowledged that when the grand jury was originally empaneled in March of 2001, the selection of the original foreperson, William Todd Durham, was not a random selection. However, subsequent to his selection, Mr. Durham became employed with the Grant Parish Sheriff's Office and resigned his position as a member of the grand jury. The trial court then selected Lawrence Jones, also a member of the grand jury, as the new foreperson. Mr. Jones, as foreman, signed the indictment charging the defendant with second degree murder.
The selection of Mr. Jones was not a random selection either. At the June 13 hearing, the trial court stated that the appointment was pursuant to the authority of La.Code Crim.P. art. 415(B) which provides, in part: "If the foreman of the grand jury is, for any reason, unable to act, the court shall designate some member of the grand jury to serve as acting foreman or to serve as a new foreman of that grand jury." (Emphasis added.)
While the defendant has shown a procedural error in the original grand jury foreperson selection process, he has failed to establish any irreparable injury as a result of the flawed selection process.
A general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race.
La.Code Crim.P. art. 419(A).
We find no merit in this assignment of error.

Errors Patent
In accordance with La.Code Crim.P. art. 920, we have reviewed the record for errors patent on the face of the record and have found one that must be addressed. In imposing sentence, the trial court is *1193 required to inform the defendant that he has two years from the date his judgment of conviction is final to seek post-conviction relief. La.Code Crim.P. art. 930.8. The trial court failed to do so in this case. Because the prescriptive period does not commence until the judgment is final, prescription has not yet begun to run. This error patent may be cured by the trial court sending written notice to the defendant that informs him of the prescriptive period for post-conviction relief.

DISPOSITION
The defendant's conviction and sentence are affirmed. The trial court is instructed to send written notice to the defendant within ten days of the rendition of this opinion to advise the defendant of the prescriptive period for post-conviction relief. The trial court shall file written proof in the record to verify that the defendant received such notice.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.