407 So.2d 1195 (1981)
STATE of Louisiana
v.
John A. RIVES.
No. 81-KA-0054.
Supreme Court of Louisiana.
December 14, 1981.
*1196 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., G. Michael Grosz, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Ralph Barnett, Gretna, for defendant-appellant.
LEMMON, Justice.[*]
This is an appeal from convictions of forcible rape and aggravated crime against nature. On appeal defendant principally challenges (1) the sufficiency of the evidence supporting the convictions and (2) the exclusion of expert testimony on the effects of phencyclidine and of evidence of defendant's lack of violent propensities.[1]
Facts
During the early morning hours of May 30, 1979 a 17-year old girl was awakened by a knock on her apartment door. Expecting her mother's return from an evening out, the young girl arose, unlatched the door, and returned to bed. When she again heard knocking sounds on her door, she called out, "It is open; come in". She heard someone enter her darkened bedroom and turned, thinking she would greet her mother, but was confronted by a man whom she had never seen before. She asked who he was and where her mother was. He responded that his name was John and that her mother was not here, adding that he had come "from your dreams". The man then walked over to her bed, seized her arms and held her in the bed. When she struggled to free herself, the man threatened to break her arm if she did not remain still. When she attempted to call out, he held his hand over her mouth and nose, making it difficult for her to breathe. The man began to kiss her and eventually removed his shoes and trousers. Despite her efforts to resist, the man had sexual intercourse with her and then performed an act *1197 of cunnilingus. After again having intercourse, the man lapsed into unconsciousness.
The terrified young girl struggled free from beneath his dormant body and ran into the hall. As she did, her mother appeared, having just returned. Although the girl was hysterical, her mother ascertained from her that she had been raped and that her assailant was still in the apartment.[2] Her mother immediately notified the apartment security officer, who called the police. Both fled to a neighbor's apartment for safety.
Shortly thereafter police arrived and found defendant sleeping without shoes or trousers in the girl's bed. He was arrested and taken to Jefferson Parish jail. Urine samples revealed the presence of phencyclidine, a hallucenogenic drug capable of producing psychic abnormality, even when taken in relatively small quantities.
Defendant was indicted for forcible rape and aggravated crime against nature. Represented by counsel, he waived trial by jury and was tried by the court. His principal defenses were involuntary intoxication and insanity at the time of the commission of the offense.
Defendant claimed no recollection of the events. He testified that he had smoked marijuana about a week before the incident with no adverse effects. He denied taking phencyclidine, adding that the last thing he remembered was having a drink in a bar located less than half a mile from the apartment. He claimed to have a total loss of memory of the intervening events until he realized he was being examined by a doctor at the Jefferson Parish jail.
The trial court, after hearing the testimony of the victim, her mother, the investigating officer, defense experts and defense character witnesses, rejected the insanity and intoxication defenses. The judge found defendant guilty on both counts and sentenced defendant to three years imprisonment at hard labor for forcible rape and to a concurrent three-year term for aggravated crime against nature. The trial court also ordered that defendant serve at least two of the years on the forcible rape count without benefit of parole.
Sufficiency of Evidence
The evidence was clearly sufficient to convince a reasonable factfinder beyond a reasonable doubt of defendant's guilt on both counts. See State v. Byrd, 385 So.2d 248 (La.1980); State v. Parish, 405 So.2d 1080 (La.1981) (No. 80-KA-1769). Despite the absence of scientific evidence of sexual intercourse, the testimony of the victim was sufficient to establish "sexual penetration". R.S. 14:41 provides that "emission is not necessary" and that "any sexual penetration, however slight, is sufficient to complete the crime". The victim's testimony also established she was prevented from resisting the act by force and threats of physical violence. R.S. 14:42.1.
As to the intoxication defense, forcible rape and aggravated crime against nature are both offenses requiring only a general criminal intent. R.S. 14:10, 11; State v. Michel, 225 La. 1040, 74 So.2d 207 (1954). Thus, voluntary intoxication is not a defense unless it is of such a degree as to render defendant both unconscious of his actions and physically unable to act. See State v. Boleyn, 328 So.2d 95 (La.1976). Further, although there was defense testimony in this case regarding amnesia, there is ample direct evidence of defendant's behavior on the evening in question from which a reasonable trier of fact could find that defendant was conscious of his actions and physically capable of acting. The fact that he may not remember his behavior does not constitute a defense to the offenses charged.
Involuntary intoxication is a defense if the "condition is the direct cause of the *1198 commission of the crime". R.S. 14:15. Without addressing the burden of proof on this issue, and assuming for purposes of this case that the state must prove that the intoxicated condition was voluntary if the defense is raised, the state's proof here is sufficient. The trial judge, who obviously rejected the defense, was not required to believe defendant's self-serving testimony, nor was he required to find that the intoxicated condition directly produced defendant's desire to quench his lustful appetites by forcibly sexually assaulting this sleeping young girl. A reasonable factfinder could easily have concluded that defendant became "high on drugs", lost his normal inhibitions, and forced himself upon this unfortunate young person whom he happened to encounter.
Insofar as his insanity defense is concerned, defendant clearly has the burden of proof. C.Cr.P. Art. 652; State v. Lee, 395 So.2d 700 (La.1981); State v. Roy, 395 So.2d 664 (La.1981). Under the evidence presented here a reasonable factfinder could have concluded that defendant failed to establish by a preponderance of evidence that, as a result of a mental disease or defect, he was incapable of distinguishing right from wrong with respect to the conduct in question. See State v. Roy, above; State v. Lee, above.
In the first place the evidence merely tended to show his drug-related intoxication and not a mental defect in the nature of insanity. The experts who examined him found no evidence of mental defects at the time of the examination. Whether his drug-intoxicated condition precluded his normal moral inhibitions (and his normal fear of prosecution) from deterring his sexual assault upon an unconsenting female is not pertinent to the insanity issue.
In the second place a rational factfinder need not have concluded from the evidence that defendant was unaware of the "wrongfulness" of his actions. See State v. Abercrombie, 375 So.2d 1170 (La.1979). He was obviously aware of her resistance and threatened bodily harm if she did not submit to his advances. His "passing out" following his bizarre sexual assault did not preponderately establish his lack of awareness of the wrongfulness of his actions. See State v. Abercrombie, above; State v. Price, 403 So.2d 660 (La.1981).
Limitation on Right to Present Defense
Defendant contends that the trial court erred in denying him the opportunity to elicit from Dr. Samuels an opinion regarding whether phencyclidine could have been the "direct cause" of the commission of a criminal act and whether phencyclidine could have rendered defendant incapable of distinguishing right from wrong.
The trial court is generally vested with great discretion regarding the competency of experts to venture opinions within their specialized fields. That discretion will be upheld absent a manifestly erroneous decision. State v. Walker, 394 So.2d 1181 (La.1981). Here, we find no abuse of discretion.
The physician testified that his field of expertise was not psychiatric medicine, but rather toxicology and pathology. He specifically disclaimed any expertise concerning the psychiatric attributes of phencyclidine and only claimed to be expert in the toxicological effects of the drug. Moreover, since defendant was fully able to explore the psychiatric effects of phencyclidine with Dr. Richard Gorey, an expert on the psychiatric effects of the drug, he was not prejudiced by the trial court's ruling.
More disturbing are defendant's complaints regarding the refusal of the trial court to permit him to offer character evidence to establish his good reputation as to character traits pertinent to the offenses charged. Defendant contends that he was prevented from offering expert and lay testimony to the effect that he was a person who lacked violent propensities.
Lack of the propensity for violence was a pertinent character trait in the present case. A defendant is permitted to offer testimony as to his good reputation regarding "such moral qualities as have pertinence to the crime with which he is charged". See R.S. 15:479, 480. See also State v. Dawson, 392 So.2d 445 (La.1980).
*1199 Here, defendant wanted to offer the testimony of a psychiatrist and four lay witnesses concerning defendant's good moral character as to any propensity toward violence. The psychiatrist was asked whether tests he had conducted on defendant showed "a propensity for violence". The lay witnesses were each asked about defendant's reputation for violence. Upon state objection the witnesses were not permitted to answer.
The trial court's rulings were arguably erroneous. However, in light of the evidence which was presented, the rulings did not prevent defendant from presenting his defense. The cumulative effect of all of the evidence adduced was to portray defendant's actions on the evening of the rape as totally "out of character". The lay witnesses were permitted to testify concerning defendant's good reputation for truthfulness and honesty and concerning his general good character. The effect of their testimony was to portray defendant as an upstanding, law-abiding young man who himself became a victim of drug stimulated (if not directly induced) misbehavior. The experts all testified concerning the bizarre effects which phencyclidine may have on the behavior of one who ingests the drug. The trial judge, in rejecting the defenses of insanity and involuntary intoxication, had before him an abundance of evidence from which he could clearly see that defendant's attack on the victim was not "in character".
Furthermore, identity was not a true issue in this case. Defendant was apprehended at the scene of the crime, and there was no indication or suggestion that defendant was not the perpetrator. If identity had been an issue, then defendant's lack of propensity for violence could have been important evidence bearing on that issue. But in this case the evidence was offered only to support the insanity and involuntary intoxication defenses. The exclusion of this cumulative evidence did not significantly prejudice the presentation of these defenses.
Therefore, the rulings complained of were clearly harmless beyond a reasonable doubt. See C.Cr.P. Art. 921; State v. Gibson, 391 So.2d 421 (La.1980).
Defendant's conviction and sentence are affirmed.
NOTES
[*] Judges Grover L. Covington, Luther F. Cole and J. Louis Watkins, Jr. of the Court of Appeal, First Circuit participated in this decision as Associate Justices ad hoc along with Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] Defendant's other assignments of error involve only settled principles of law and are treated in an unpublished appendix attached to this opinion.
[2] The mother recognized defendant from having seen him about two or three weeks before the rape. He was the same man she had discovered attempting to open the door of a neighbor's apartment. She knew the neighbors were out of town and challenged his being there. He claimed to be looking for a friend. When she told him his friend didn't live in that apartment, he smiled, thanked her and left.