513 So.2d 481 (1987)
STATE of Louisiana, Appellee,
v.
Stanley STANDIFER & Charles Edward Morgan, Defendants/Appellants.
Nos. 18951-KA, 18952-KA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1987.
*482 Larry Jefferson, Monroe, for defendants-appellants.
Kathy McCoy, Asst. Dist. Atty., Monroe, for appellee.
Before FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
NORRIS, Judge.
Stanley Standifer and Charles Edward Morgan were found guilty of forcible rape after a jury trial. [LSA-R.S. 14:42.1] Each defendant was sentenced to a term of 20 years at hard labor without benefit of parole, probation or suspension of sentence. The defendants appeal the denial of their motions for post-verdict judgment of acquittal and appeal their sentences as excessive. We find no merit in defendants' assignments of error. The convictions and sentences are affirmed.
*483 The record reveals that the victim left her place of employment, Elite's Disco, at 2:40 a.m. on February 17, 1986. As she was walking home a tall black male shouted at her from across Highway 165, which she had just crossed. She told the man, whom she recognized as a customer she had seen earlier in the evening, that she had to go home and continued walking. She noticed a second man, whom she had also seen at Elite's that night, across the street. She entered a convenience store to buy a bag of potato chips and loitered there for a few minutes, hoping that the men would go on. After she left the store she noticed the man who had called out to her following her, and spotted the other man across the street. When she reached the front of the Bojangles restaurant, the tall man following her grabbed her purse and began wrestling with her. The other man crossed the street to help restrain her, and they pushed her behind the produce stand next to Bojangles. The taller man went through her purse, scattering the contents on the ground, as the second man "guarded" her to prevent her from escaping. The victim was then forced to have sexual intercourse with both men. The victim struggled, but the taller man hit her, threatened her with beer bottles, and said he would kill her if she told anyone. After the sexual assault she was able to escape from her attackers while they were attempting to move her to another location. She ran across the street, entered a Yellow Cab, and had the driver call the police. When the police arrived at the crime scene the victim told them that she had seen her attackers earlier at Elite's Disco, but did not know their names. After hearing the victim's description of her assailants, Billy Varner, the manager of Elite's, obtained the defendants' names from a friend and supplied them to the police. The police showed the victim photographic line-ups from which she identified the defendants as the men who raped her. Varner also identified the defendants from a photographic line-up as two men who had been in Elite's on the date of the rape. The defendants were then arrested and tried for forcible rape.

ASSIGNMENT OF ERROR # 1
Defendants argue that they were entitled to a post-verdict judgment of acquittal based upon: 1) the lack of positive identification of the defendants as the perpetrators of the crime; 2) the lack of proof of penetration; and 3) the lack of proof that the defendants prevented the victim from resisting the act of rape.
The test for reviewing the denial of a post-verdict judgment of acquittal is the sufficiency of evidence test enunciated in Jackson v. Virginia. The evidence, viewed in the light most favorable to the prosecution, must be sufficient for a rational factfinder to conclude that the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If the evidence is legally insufficient, the verdict must be set aside and either a modified verdict or judgment of acquittal must be entered. State v. Byrd, 385 So.2d 248 (La.1980).
The defendants' first argument is that there was no positive identification of the defendants as the perpetrators of the crime. The defense counsel[1] asserts that the witnesses had contradictions in their descriptions of the defendants that rendered their identifications of the defendants invalid. The victim testified that Morgan, the tall defendant, had a moustache and a light beard and that Standifer, the shorter defendant, had a moustache. Billy Varner, who identified the defendants at trial as having been in Elite's the night of the rape, stated that he did not notice whether either of the defendants had beards. Officer Brown said he noticed Morgan and Standifer had moustaches at *484 the time that they were arrested, but that if they had beards then they were "scraggly". It is on this contradiction in testimony that defense counsel bases his argument that the defendants were not sufficiently identified so as to connect them with the crime in question. However, the only contradictory point is that the victim said that Morgan had a light beard while Varner and Officer Brown did not notice one. This slight disparity is not in and of itself sufficient to render the witnesses' identification of the defendants unreliable.
It is clear that the victim had ample opportunity to view the defendants. The victim testified that she initially saw both men in Elite's Disco on the night in question. She remembered selling Morgan three bowls of ice, and seeing Standifer standing next to the DJ stand. She described the lighting in the bar as "moderate", and sufficient to recognize people. The victim testified that she recognized Morgan when he called out to her on the street, and recognized Standifer when she first spotted him. She said that there was plenty of light from the street lights, and that the front of Bojangles, where they first attacked her, was well-lighted. She readily picked both defendants out of a photographic line-up, and made a positive in-court identification of the defendants. Her description of her two assailants was so detailed and accurate that Varner was able to remember that they were in Elite's on the night of the rape and learn their names. Varner corroborated the victim's testimony that the defendants had been in Elite's that night, making a positive identification of them in a photographic line-up and at trial. When we view the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could conclude beyond a reasonable doubt that the victim had correctly identified her assailants, and the defendants were the perpetrators of the crime.
Defendants' next argument is that penetration was not proven. Rape and forcible rape are defined as follows:
§ 41 Rape; defined
A. Rape is the act of anal or vaginal sexual intercourse with a male or female person who is not the spouse of the offender, committed without the person's lawful consent.
B. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
§ 42.1 Forcible rape
A. Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
B. Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence.
The victim initially testified on direct examination that the defendants had sex with her; that they had penetrated her body. On cross-examination, she said that she did not know whether penetration took place. However, on redirect-examination she explained that she was confused between the terms ejaculation and penetration. She testified that she did not know if the defendants had ejaculated, but that there was penetration, that both defendants had entered her body. On recross-examination she reiterated that she did not understand what she was being asked at the earlier time. It was not unreasonable for the jury to place more weight on her testimony that the defendants had entered her body, and conclude that penetration had taken place.
The initial wet prep examination did not reveal any traces of active or inactive sperm. However, Dr. O'Neal, who conducted the emergency room examination and made the wet prep examination, testified that the results were not conclusive and that the dry slide exam was more *485 accurate. The dry slide examination of samples taken at that time did show that sperm was present in the victim's vagina. Dr. O'Neal testified that it was her opinion that the victim had been raped, and that the injuries she had were consistent with her account of the attack.
The testimony of a victim in a rape case that penetration did in fact take place is sufficient to establish sexual penetration. State v. Rives, 407 So.2d 1195 (La.1981). Here, there is also corroborating scientific evidence. We conclude that the state met its burden of proving that sexual penetration did in fact take place.
Defendants' final attack on the sufficiency of evidence is their contention that the elements of forcible rape were not proven because the State did not show that the victim was prevented from resisting the act by force or threats of violence. They make the novel argument that the victim was not prevented from resisting because she testified that she had resisted and fought back.[2] The obvious flaw in the logic of this argument is that had her resistance to the act of intercourse not been overcome, she would have prevented the rape. Here, the victim did not successfully resist the act because her attempt at resistance was overcome by force and threats of physical violence.
The record reveals that the victim was first grabbed by Morgan and pushed behind a produce stand adjacent to Bojangle's. Standifer then was helping to "guard" her and prevent her from escaping. She testified that Morgan wrestled with her while Standifer watched in case anyone came along. She said that she was trying to fight and resist, but that Morgan hit her with his fist and threatened her with a beer bottle. In the emergency room examination Doctor O'Neal noted that the victim had several bruises and abrasions consistant with her struggles against the two men. Any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that her resistance was overcome by force, and the requisites of LSA-R.S. 14:42.1 were met. There is no merit in this argument.

ASSIGNMENT OF ERROR # 2
Defendants' second assignment of error is that their sentences of 20 years at hard labor without benefit of parole, probation, or suspension of sentence are unconstitutionally excessive.
A sentence is constitutionally excessive in violation of Louisiana Constitution of 1974 Art. I, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983), writ denied 438 So.2d 1112 (La.1983). In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions and may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied 452 So.2d 695 (La.1984).

CHARLES EDWARD MORGAN
At the sentencing hearing the judge made an extensive review of the factors he was considering in sentencing Morgan, who was 33 at that time. The court noted that Morgan had a juvenile record in addition to a lengthy criminal history as an adult. In 1975 Morgan was convicted of simple robbery; in 1976 he was convicted of forgery; he was convicted of bail jumping in 1982; in 1984 he had two convictions of simple battery; and in 1985 he was convicted of shoplifting and resisting an officer as well as simple battery. Morgan admits to having a drug problem which he is unable to control. The judge noted that the defendant *486 had spent at least 11 years of his life in prison, and including his conviction in the present case is classified as a fourth felony offender. The judge noted that Morgan's imprisonment would entail no hardship to anyone but himself, and that the victim in no way facilitated the commission of the crime. The only mitigating factor the court found was that Morgan denied his guilt; however the court noted that the jury overwhelmingly found him guilty of the present offense. After considering the C.Cr.P. Art. 894.1 sentencing factors the judge decided that Morgan is a poor risk for lenient treatment and is in need of further correctional treatment that could be provided only by incarceration.

STANLEY STANDIFER
Standifer, age 30 at the time of the sentencing, had a juvenile record which the PSI classified as extensive and violent. He was convicted of simple battery in 1971; in 1972 he was convicted of simple battery and simple escape; in 1973 he was convicted of disturbing the peace; in 1974 he was convicted of two counts of simple battery; in 1974 he was convicted of attempted aggravated escape; in 1977 he was charged with attempted murder and convicted of the reduced charge of aggravated battery; in 1979 he was convicted of criminal mischief, disturbing the peace and resisting an officer, and also simple battery; in 1981 he was charged with disturbing the peace, resisting arrest, aggravated assault and second degree battery, all reduced to simple battery and resisting arrest, to which he pled guilty; in 1981 his parole was revoked; in 1985 he was convicted of resisting an officer, criminal damage to property and two counts of disturbing the peace. Including the instant offense, Standifer is at least a third felony offender. The court found that there was nothing in the record that spoke for the benefit of the defendant except his denial of guilt with which the jury evidently disagreed. The court noted that there was no evidence that the victim had facilitated the commission of the crime. Rather, the evidence shows that the defendants stalked the victim, seized her, threatened her life, struck and abused her, and raped her. The court considered the extensive criminal background of the defendant and found that he was a poor risk to respond affirmatively to lenient treatment and was obviously in need of further corrective treatment that would only be provided by incarceration.
The trial judge in this case particularized the sentence to each defendant and considered the present offense and its seriousness in sentencing the defendants. The maximum sentence imposed under LSA-R.S. 14:42.1 is imprisonment at hard labor for not less than five years nor more than forty years. At least two years of the sentence imposed shall be without benefit of parole, probation or suspension of sentence. The trial judge in this case did not sentence the defendants to the maximum sentence under the article. After considering the criminal history of the defendants and the seriousness and violent factors involved in the present act, he sentenced the defendants to 20 years at hard labor without benefit of probation, parole, or suspension of sentence. This sentence cannot be said to be grossly out of proportion to the severity of the offense nor nothing more than a needless and purposeless imposition of pain and suffering.
Finding no merit in the defendants' assignments of error, we affirm their convictions and sentences.
AFFIRMED.
NOTES
[1] The defense counsel contends that the Neal v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) factors relative to the reliability of the victim's identification of the defendant are applicable here. However, these cases deal with the admissibility of identification testimony, which is not at issue here, because defense counsel did not object to the in court identification.
[2] Q. During the time that this act took place you were resisting these people. Is that correct?

A. Yes, sir.
Q. And you weren't prevented in any serious way from doing so. Is that correct?
A. Do what?
Q. You weren't prevented in any serious way from resisting. Is that correct?
A. I resisted and I was fighting back because I didn't wantI didn't ask for it and I didn't want it and I didn't like it.