721 So.2d 1090 (1998)
STATE of Louisiana, Appellee,
v.
Ricky ADKINS, Appellant.
No. 31300-KA.
Court of Appeal of Louisiana, Second Circuit.
November 9, 1998.
*1092 Wilson Rambo, Louisiana Appellate Project, for Appellant.
Richard Ieyoub, Attorney General, Don Burkett, District Attorney, Richard Z. Johnson, Jr., Assistant District Attorney, for Appellee.
Before NORRIS, WILLIAMS and CARAWAY, JJ.
NORRIS, Judge.
Ricky Adkins was indicted on three counts of aggravated rape involving girls under the age of 12. He proceeded to jury trial and was found guilty of two counts of forcible rape. The District Court sentenced him to concurrent terms of 40 years at hard labor, the first two years of each without benefit of parole, probation or suspension of sentence. Adkins now appeals, urging several assignments of error. For the reasons expressed, we affirm.

Procedural background
Ricky Adkins was arrested in May 1996 for allegedly molesting three sisters, all under the age of 12, between January and July 1995. The girls' mother, Ruthie Barkins, was Adkins's girlfriend; at the time of the alleged offenses, Ms. Barkins and the girls were living with him (the youngest girl, L.B., is Adkins's child). An indictment on three counts of aggravated rape followed in January 1997. Adkins filed a motion for expeditious disposition of the case pursuant to La. R.S. 15:171 and, later, a motion to quash based on violations of the same statute and the speedy trial law; both were denied. Jury trial was held in July 1997. The evidence included the testimony of the victims, their mother and other family members, an expert psychiatrist and pediatrician, a social worker and sheriff's deputy, and the defendant himself. This testimony will be summarized in conjunction with Adkins's sufficiency claim.
After three hours of deliberation, the jury found Adkins guilty of the responsive charge of forcible rape with respect to the two older girls, C.B. and S.B. (who are not related to him), and acquitted him of the charge against L.B., his daughter. The District Court ordered a pre-sentence investigation report ("PSI"); Adkins filed a pro se motion for new trial, alleging numerous grounds, chiefly ineffective assistance of counsel. New counsel was appointed and a hearing was held; the motion for new trial was denied. In February 1998 the District Court sentenced Adkins, on each count, to concurrent sentences of 40 years at hard labor, the first two of each without benefit of parole, probation or suspension of sentence.

Discussion: Sufficiency of the evidence
By his fourth, fifth and sixth assignments of error Adkins contends the evidence is not sufficient to support his convictions for forcible rape.[1]
When a defendant challenges both the sufficiency of evidence and one or more other trial errors, the appellate court should first resolve the sufficiency challenge. State v. Hearold, 603 So.2d 731 (La.1992); State v. Evans, 29,675 (La.App. 2 Cir. 9/24/97), 700 So.2d 1039, writ denied 97-2942 (La.1/9/98), 705 So.2d 1121. The constitutional standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132. This standard, initially enunciated in Jackson and now legislatively embodied in La.C.Cr.P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Daniels, 614 So.2d 97 (La.App. 2 Cir.), writ denied 619 So.2d 573 (1993). This standard does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess credibility or re-weigh evidence. *1093 State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
When the defendant asserts that he was not the perpetrator, or he remains silent, the State bears the burden of negating any reasonable probability of misidentification. State v. Powell, 27,959 (La.App. 2 Cir. 4/21/96), 677 So.2d 1008 (on rehearing), writ denied 96-1807 (La.2/21/97), 688 So.2d 520. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a defendant's conviction. State v. Braswell, 605 So.2d 702 (La.App. 2 Cir.1992), and citations therein; State v. Gradick, 29,231 (La.App. 2 Cir. 1/22/97), 687 So.2d 1071. Specifically, a rape victim's testimony establishing the facts of the offense is sufficient to prove sexual penetration and the other elements of the offense, absent irresolvable conflict with the physical evidence. State v. Rives, 407 So.2d 1195 (La.1981); State v. Thomas, 30,490 (La. App. 2 Cir. 4/8/98), 711 So.2d 808; State v. Standifer, 513 So.2d 481 (La.App. 2 Cir. 1987).
Rape is defined as the act of anal or vaginal sexual intercourse with a male or female person committed without a person's lawful consent. Emission is not necessary and any sexual penetration, vaginal or anal, however slight, is sufficient to complete the crime. La. R.S. 14:41. Forcible rape is committed when:
the anal or vaginal intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. La. R.S. 14:42.1.
The State's evidence against Adkins was fairly extensive. C.B. and S.B. were nine and 10 years old respectively at the time of the offenses. Their uncle, Jessie Summers, testified that shortly before the arrest, he overheard their conversation at play, and C.B. said that Adkins had been "hunching" them. He confronted them with this; C.B. repeated the statement, and S.B. initially said nothing had happened. After being reassured no harm would come to her, S.B. admitted that Adkins "was hunching us" and told them he would kill them if they told anybody. They related that Adkins put his hands in places that made them feel uncomfortable and caused them to bleed. Summers could not remember exactly when this conversation occurred, but testified that the girls' mother, Ms. Barkins, moved out shortly afterward. K.B., the victims' 13-year-old brother, corroborated that C.B. and S.B. told him that Adkins had "raped" and "beat" them, and they were afraid of him. K.B. said they told him this in 1995 when they were still living with Adkins.
An expert in child and adolescent psychiatry, Dr. Gregory J. Brown, testified that he had been treating C.B. for severe emotional and violent outbursts since March 1996. According to Dr. Brown, C.B. reported that she had been sexually molested; at first, she was scared to give any details of the incident because of threats she would be killed, but Dr. Brown said this reaction is "very typical" in such situations. Eventually, however, C.B. told the doctor in great detail how her mother's boyfriend had "physically and forcibly raped" her while they lived with him, about a year or 18 months prior to her initial visit. C.B.'s first description of the crime was that her "mother's boyfriend was hunching her." Dr. Brown concluded that C.B., who is mildly retarded, now suffers from post traumatic stress disorder as a result of the ordeal.
C.B. and S.B. both testified via closedcircuit TV in accord with La. R.S. 15:283. C.B., who was 11 at the time of trial, testified that Adkins had raped her and forced her to have oral sex with him; threatened to kill her and S.B. if they told anyone; and that this happened while they were living with Adkins. S.B., 12 at the time of trial, testified that Adkins had raped and fondled her since she was eight years old, and threatened to kill her. She went into some detail regarding the acts. She admitted she did not initially tell investigators that Adkins was the offender because she was so afraid of him.
A pediatrician specializing in the treatment of abused and neglected children, Dr. Anne *1094 Springer, examined all three girls in May 1996 pursuant to an OCS referral. Using a colposcope, an instrument specifically suited for examining young sexual assault victims, she discovered that both S.B. and C.B.'s hymens were completely torn and their genitals scarred in multiple areas. Additionally, L.B.'s hymen was stretched and thinned out. Dr. Springer testified that such injuries are consistent with sexual molestation and multiple penetrations. While she could not tell exactly when they occurred, Dr. Springer noted that the injuries had healed by the time of examination. As the involved tissue takes 10-14 days to mend, she felt the injuries were older, and could have occurred any time prior to her examination.
Two of Adkins's nieces, Candy Adkins and Shereca Adkins, testified about prior acts of molestation committed by Adkins.[2] Candy, who was 16 at the time of trial, stated that Adkins had tried to "mess with" her, but she would not let him. When asked for specifics, she became emotional and could not continue testifying. Shereca, who was 18 at the time of trial, stated that Adkins had touched her "all over her body." She could not pinpoint a time frame, saying only that this happened long ago.
The State's final witness was Deputy Dora Youngblood, an investigator for the DeSoto Parish Sheriff's Office. She interviewed S.B. in April and May 1996; initially, S.B. stated that Adkins did nothing. However, in the second interview, S.B. admitted that Adkins had "hunched" her, and explained her prior denial by her fear of Adkins. Dep. Youngblood also interviewed C.B., who likewise said she had been molested by Adkins.
In his defense, Adkins called his five-year-old daughter, the youngest of the alleged victims, L.B. She could not remember back to when she was three, but she did recall living with her mother and father. Asked to relate back to that time, she could not recall anything out of the ordinary happening to her.
Mary Bagley, a social worker with the Department of Social Services, had investigated allegations of neglect while the children were living with Adkins. While there were no allegations of sexual abuse at the time, someone subsequently reported that S.B. and C.B. had been molested. Ms. Bagley then interviewed them, using anatomically correct dolls or drawings; S.B. and C.B. both indicated that Adkins had raped them. L.B. indicated that she had been touched inappropriately, but said Adkins did not do it. Ms. Bagley admitted that after Adkins was in jail, someone else had been alleged to have molested C.B., but she had no first hand information about that investigation.
The defense called Ms. Barkins, the girls' mother, and chiefly assailed her credibility. The theory was that Ms. Barkins wanted to "get back at" Adkins because they broke up, and she intentionally made a false paternity claim against him regarding her youngest son. Ms. Barkins testified that after she and Adkins split up in June 1995, she and the children left his home; she denied threatening him or even knowing who he was dating at the time. She insisted that she made the paternity claim in good faith. She learned about the molestation from her brother-inlaw, Jessie Summers; she did not report it at the time because of Adkins's threats to the children. Nonetheless, she reported everything to Ms. Bagley about a year later. Ms. Barkins added that while she lived with Adkins, he had ample opportunities to be alone with S.B. and C.B., as when she went shopping. Finally, she admitted that Adkins worked out of state for part of the time they lived together, but this was only in late 1994 or early 1995.
Adkins testified in his own behalf. He admitted a prior criminal history but denied having sex with any of the victims or engaging in any inappropriate behavior. He felt that Ms. Barkins fabricated the allegations because she was upset that he moved in with another woman; in fact, Ms. Barkins had said he would regret leaving her. Adkins testified that he was working in Texas during the first portion of the time in question; he afterwards worked 10-12 hours a day as a construction laborer until Ms. Barkins and *1095 the girls left. He therefore maintained he had no opportunity to commit the crimes. He added that the girls spent weekends at Jessie Summers's house, and speculated that their uncle may have raped them.
Based on this evidence, a rational fact finder could conclude that Adkins forcibly raped S.B. and C.B. Both victims testified that he raped them while they were living with him, and threatened to kill them if they reported it. Each stated, when asked, that penetration had occurred. Several family members corroborated that the girls said Adkins raped them. The victims' reluctance to report Adkins's acts can be rationally explained by his threats to harm or kill them. This evidence alone will support the convictions. State v. Thomas, supra. Moreover, the medical and psychiatric evidence revealed physical and emotional symptoms consistent with the alleged acts of molestation.
Adkins simply denied the allegations of misconduct, but the jury could rationally discredit his testimony. The evidence of prior acts of molestation served to undermine his credibility, and negated the possibility that someone else may have actually assaulted C.B. and S.B. While he maintained that he was out of state during part of the time frame, and working long hours for the balance of it, this did not remove him from the victims on evenings and weekends; Ms. Barkins said the girls were alone with him on various occasions. There was no corroboration of Adkins's claim that Ms. Barkins was trying to "get him back" for dating another woman, or that Jessie Summers raped the children. In short, we perceive no basis to disturb the jury's credibility call.
Finally, we note that the jury acquitted Adkins with respect to L.B., and returned only a responsive verdict as to C.B. and S.B. This indicates a careful and perceptive approach to the evidence, and belies any contention that the jury convicted solely because the case involved the rape of a child. In short, the record evidence viewed in the light most favorable to the State is sufficient to find beyond a reasonable doubt every essential element of forcible rape. These assignments of error lack merit.

The R.S. 15:171 claim
By his seventh assignment Adkins urges his case should have been dismissed because trial did not commence within the six months set for the expeditious disposition of criminal cases involving minors designated in R.S. 15:171.[3] This statute provided that in cases involving "the abuse of a child, or unlawful sexual contact, or acts performed in the presence of, with, or upon a child under the age of seventeen," the trial shall commence within six months after arraignment. In support of his motion to quash the prosecution, he cites State v. Deville, 97-665 (La. App. 3 Cir. 10/15/97), 701 So.2d 254, writ denied 97-2799 (La.7/20/98), 709 So.2d 773, and State v. Ste. Marie, 97-168 (La.App. 3 Cir. 12/17/97), 704 So.2d 430.
This court, however, has specifically declined to adopt the conclusion that R.S. 15:171, which is obviously intended to benefit young victims of crimes, also confers the benefit of dismissal after six months lapse. State v. Ingram, 31,706 (La.App. 2 Cir. 9/17/98), ___ So.2d ___, 1998 WL 633966. In so holding, we rejected the strained reasoning of State v. Deville and State v. Ste. Marie, supra. We are now aware that the Third Circuit has overruled those cases and held that a violation of the former R.S. 15:171 does not entitle the defendant to quash the indictment. See State v. Longnon, 98-551 (La.App. 3 Cir. 10/28/98) (en banc), 720 So.2d 825.
We therefore find that even if Adkins has proved a violation of R.S. 15:171, he is not entitled to the dismissal of these charges. This assignment lacks merit.

Excessive sentence
By his first two assignments Adkins urges the District Court erred in denying his motion to reconsider sentences and in imposing an unduly harsh and excessive sentence.
The District Court has wide discretion to sentence within statutory limits; absent a showing of manifest abuse of discretion, the appellate court will not set aside a sentence as excessive. State v. Square, 433 *1096 So.2d 104 (La.1983); State v. Thompson, 25,583 (La.App. 2 Cir. 1/19/94), 631 So.2d 555. Appellate review for excessiveness is a twostep process. First the record must show that the court adequately considered the criteria of La.C.Cr.P. art. 894.1. State v. Smith, 433 So.2d 688 (La.1983). The goal of art. 894.1 is a sufficient factual basis for sentence, not a rote recitation of guidelines. State v. Adger, 30,215 (La.App. 2 Cir. 12/10/97), 707 So.2d 1000, and citations therein. When the record shows an adequate factual basis for the sentence imposed, remand will not be ordered even in the absence of full compliance with art. 894.1. Id.
The second step is to gauge the sentence to the offense and offender. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is grossly disproportionate if, when crime and punishment are viewed in light of the harm done to society, the sentence shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). Maximum sentences are generally reserved for the most serious incidents of the offense and the worst type of offenders. State v. Lathers, 444 So.2d 96 (La.1983); State v. Delaughter, 29,974 (La.App. 2 Cir. 12/10/97), 703 So.2d 1364, writ denied 98-0018 (La.5/1/98), ___ So.2d ___, 1998 WL 234691.
In the instant case the District Court ordered and reviewed the PSI prior to sentencing. The court noted that Adkins had a prior criminal history including a felony conviction for issuing worthless checks, other felony charges that were "dismissed or for which minor sentences were imposed," and various misdemeanor convictions. The court assigned little weight to it, but remarked that Adkins's prior history suggested an alcohol abuse problem and that he had "skated around" past offenses. In mitigation, the court recognized that Adkins was 33 years old and that several persons in the community had said good things about him. Another consideration was Adkins's eligibility for "good time" under R.S. 15:571.3 at a rate of one day for every two spent in prison.
Nonetheless, the court classified the crime of conviction as a "very serious offense" and noted that the trial chronicles in detail a "very sad situation." While declining to reiterate the details on the record, the court commented that it would consider not only the molestation of his then-girlfriend's two young daughters, but also the testimony of nieces who were victims. The court further noted that Adkins had committed the crime charged, aggravated rape, but the jury returned the responsive verdict likely to avoid the mandatory life sentence. We find that the District Court offered an adequate factual basis for the sentence imposed.
The penalty for forcible rape is a minimum of five and a maximum of 40 years at hard labor, including at least two years without benefit of parole, probation or suspension of sentence. R.S. 14:42.1 B. Adkins received the maximum time (and minimum "without benefit") on each count. However, as both of his victims were children under the age of 12, he could have been convicted of aggravated rape and subject to two consecutive mandatory life sentences without benefit. Testimony at trial and information from the PSI indicated that he repeatedly raped and threatened C.B. and S.B., who were part of a family unit in which he was the only father figure. The violation of the paternal role is, needless to say, egregious. See, e.g., State v. Rasberry, 564 So.2d 740 (La.App. 2 Cir.1990). The victims' emotional trauma was documented at trial. On this record the District Court was entitled to characterize Adkins as the worst type of offender committing the worst type of crime. The maximum sentences, run concurrently and subject to the minimum without benefit, do not shock our sense of justice. See, State v. Phillips, 29,020 (La.App. 2 Cir. 12/11/96), 685 So.2d 565; State v. Adams, 493 So.2d 835 (La.App. 2 Cir.), writ denied 496 So.2d 355 (1986); State v. Rasberry, supra; State v. Jackson, 597 So.2d 1188 (La.App. 5 Cir.1992). Simply put, these sentences are not excessive. These assignments of error lack merit.

Other assignments
In appellate brief, counsel "reserved" for appeal the 18 errors assigned by *1097 Adkins in a pro se motion for new trial filed in District Court. These errors, however, have not been argued either in appellate brief or in the supplemental pro se brief. Assignments of error which are neither briefed nor argued are deemed abandoned. URCA Rule 2-12.4; State v. Hattaway, 28,060 (La.App. 2 Cir. 5/8/96), 674 So.2d 380, writ denied 96-1900 (La.1/10/97), 685 So.2d 141, and citations therein.[4]

Error patent review
On review of the record we note the District Court advised Adkins at sentencing that he had "three years from this date to file post-conviction relief." Article 930.8 provides that a defendant seeking PCR must do so within three years after the "judgment of conviction and sentence has become final." This defect has no bearing on the validity of the sentence and does not warrant remand. La.C.Cr.P. art. 921. The District Court is directed to give appropriate written notice of the prescriptive period for PCR within 10 days of the rendition of this opinion and to file Adkins's receipt thereof in the record. State v. Lindsey, 28,016 (La.App. 2 Cir. 4/3/96), 671 So.2d 1155, and citations therein. We find nothing else we consider to be error patent.

Decree
For the above reasons, Ricky Adkins's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] In addition to the brief filed by appellate counsel, Adkins has filed a short supplemental brief styled, "Thing To Take A Special Look At," citing eight specific testimonial items. These have been included in our evaluation of the evidence for sufficiency.
[2] The District Court ruled this testimony admissible in a pretrial hearing pursuant to State v. Prieur, 277 So.2d 126 (La.1973). Adkins has not directly attacked this pretrial ruling.
[3] This statute was repealed by La. Acts 1997, No. 713, effective July 8, 1997.
[4] We note parenthetically that the majority of the new trial contentions raise issues of ineffective assistance of counsel. Such claims are generally raised by application for PCR in the trial court, where a full evidentiary hearing may be conducted if warranted. State v. Hamilton, 92-2639 (La.7/1/97), 699 So.2d 29; State v. Anderson, 29,282 (La.App. 2 Cir. 6/18/97), 697 So.2d 651. The remaining two issues are meritless: (1) Denial of a pre-trial motion to reduce bail is moot after conviction and sentence. See State v. Grillette, 588 So.2d 1338 (La.App. 2 Cir.1991).(2) Denial of right of self-representation is inapplicable as we find nothing in the record to indicate that Adkins ever asked the court to represent himself.