| .BROWN, C.J.
A unanimous 12-person jury convicted defendant, Alfred Lee Hunter, of the aggravated rape of his girlfriend’s nine-year-old daughter. Defendant was sentenced to life imprisonment without benefit. Defendant has appealed his conviction. Finding no error, we affirm defendant’s conviction and sentence.

Discussion

Sufficiency of the Evidence

Defendant argues that the state failed to prove every element of the offense of aggravated rape beyond a reasonable doubt. According to defendant, although the testimony of the victim alone can be sufficient, in the instant case, inconsistencies in her testimony as well as the other evidence presented created reasonable doubt concerning defendant’s guilt.

Applicable Legal Principles

La. R.S. 14:42[1] as it read at the time of the crime, February 14,1999, through May 6, 2000, provided in part that:
(A) Aggravated rape is a rape committed upon a person 65 years of age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
[[Image here]]
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim’s age shall not be a defense.
La. R.S. 14:41 defined rape as follows:
(A) Rape is the act of anal or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.
1 g(B) Emission is not necessary, and any sexual penetration, vaginal or anal, however slight, is sufficient to complete the crime.
When issues are raised on appeal both as to the sufficiency of the evidence and as *1206 to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
13This court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidenee evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, 02-3090 (La.11/14/03), 858 So.2d 422.
The testimony of the victim alone is sufficient to convict a defendant. State v. Ponsell, 33,543 (La.App.2d Cir.08/23/00), 766 So.2d 678, writ denied, 00-2726 (La.10/12/01), 799 So.2d 490. This is equally applicable to the testimony of sexual assault victims. State v. Rives, 407 So.2d 1195 (La.1981); State v. Thomas, 30,490 (La.App.2d Cir.04/08/98), 711 So.2d 808, writ denied, 99-0331 (La.07/02/99), 747 So.2d 8; State v. Free, 26,267 (La. App.2d Cir.09/21/94), 643 So.2d 767, unit denied, 94-2846 (La.03/10/95), 650 So.2d 1175; State v. Standifer, 513 So.2d 481 (La.App. 2d Cir.1987). Indeed, such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Ponsell, supra; State v. Watson, 32,203 (La.App.2d Cir.08/18/99), 743 So.2d 239, writ denied, 99-3014 (La.03/31/00), 759 So.2d 69; State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (La.1992).

\ ¿Trial Testimony

Yolanda Holland testified that in May 2000, she was living in Ruston with her young son and nine-year-old daughter, the victim herein. Yolanda’s boyfriend, the 33-year-old defendant, also lived with them. On Monday, May 9, 2000, defendant told Yolanda to take the victim to the doctor because she had a bump on her “privacy.” Yolanda stated that she didn’t ask defendant how he knew that the victim had a bump on her “privacy.” Yolanda testified that the last time that she and defendant had sex was the day before, *1207 Sunday, May 8th. What was unusual to Yolanda was that defendant told her that they couldn’t have sex for long because he had a bump on his “D-I-C-K.”
That Monday, defendant dropped Yolanda and the victim off at the Green Clinic. Dr. David McGehee, a pediatrician, examined the victim, and observed numerous lesions and ulcerations in the child’s vaginal area. Dr. McGehee informed Yolanda that the victim was suffering from an initial outbreak of genital herpes. Yolanda stated that she panicked upon learning this, and the victim began crying. Defendant did not return to the clinic to pick up Yolanda and the victim as planned, so they walked from the clinic to Yolanda’s mother’s house. Yolanda told her mother about their visit to the clinic and the doctor’s diagnosis. Yolanda’s sister, Misty, questioned the victim about how she got herpes, and the victim told her that, “Alfred messed with me.” The victim did not tell her mother what had happened because she thought that she would get into trouble. Yolanda filed a complaint with the Ruston Police Department that same day.
| sRuston Police Officers Gerald Jenkins and Stephen Beard investigated the sexual abuse complaint. Officer Jenkins testified that he interviewed Yolanda and questioned the victim, who appeared to be in pain and walked in a slightly crouched position. The victim gave two statements to Officer Jenkins and identified defendant as her assailant. Officer Jenkins noted that these statements were consistent. The officers then made contact with defendant. After being advised of his rights, defendant denied the allegations made by the victim during questioning by the officers. At that point, defendant was not under arrest. The investigation continued and the officers learned that the 9-year-old victim tested positive for a sexually transmitted disease, genital herpes types I and II. The officers then obtained a search warrant for the seizure of defendant’s blood, hair, and saliva, as well as samples from his genitalia. Defendant would not voluntarily submit to the testing, so the warrant was executed by Dr. Thomas Drew Carey, a dermatologist. Samples were taken from defendant’s penis, and photographs of an apparent scar or lesion were made. Cultures confirmed that defendant had genital herpes, the same types for which the 9-year-old victim had tested positive.
The victim identified defendant in court, and. stated that the last time, he had “messed” with her was the same weekend that she went to the doctor. Defendant came into her room and woke her up. He pulled down her panties and shorts and began touching her “butt” with his hand. Defendant then put his “wing wing” (her term for “penis”) into her “butt.” The victim didn’t remember how long this took, but when defendant got up, she saw | fi“white stuff’ on her “privacy part,” which she later wiped off with a tissue. Defendant then went into the living room, turned off the television and lights, and went to bed. The victim stated that she didn’t tell anyone what defendant had done until they got back from the doctor. She didn’t tell her mother because she didn’t want to get in trouble.
On cross-examination, the victim stated that defendant did not put his “wing wing” anywhere except in her “butt.” When asked if she was sure that defendant put his “wing wing” in her “butt,” or whether he just left it outside, the victim stated that it-was put in her “butt.” She stated that she was certain of this fact. On redirect, the victim stated that she knew what it felt like to have something put in her “butt.” She then reiterated that defen *1208 dant put his “wing wing” in her “butt hole.”
Dr. David McGehee, pediatrician,- testified regarding his examination of the victim and the results of the medical tests conducted. He observed that the victim had numerous, uniform lesions and ulcerations in her vaginal area. Dr. McGehee stated that he was medically certain that the victim was experiencing her first outbreak of herpes at the time of the May 9, 2000, examination because of the characterization of the lesions on her labia. Specifically, Dr. McGehee opined that the victim had been infected within the last three or four days. It1 was the pediatrician’s opinion that the victim got herpes from sexual contact with an infected individual. Dr; McGehee testified that the test results showed that the victim was positive for herpes simplex types I and II. The results also showed that the victim was positive for IgG, immunoglobulin type G, which is-usually associated with past |7infection. Dr. McGehee acknowledged that this result was inconsistent with his opinion that the victim was experiencing her initial outbreak of herpes, but noted that a possible reason that her result was positive for IgG was cross-reactivity between types I and II herpes. Dr. McGehee acknowledged that the location of the lesions on the victim’s labia was inconsistent with her claim of anal penetration because the lesions were not on the anus. He emphasized, however, that the location of the lesions did not exclude the fact that the victim had been anally penetrated by someone with active lesions. Dr. McGehee noted that while the victim’s exam showed no physical evidence of anal intercpurse, most of the children he has examined who have been anally abused have showed no physical signs of such abuse. He pointed out that the rubbing of an infected penis in a vaginal area, • particularly the external genitalia, does transmit herpes and was consistent with his findings. Dr. McGehee testified that the risk of catching herpes through an indirect method, i.e., from a towel, toilet seat or bathtub, is minuscule.
Dr. Thomas Drew Carey, a dermatologist; testified at trial that the incubation period from exposure to a herpes blister to the development of physical symptoms of herpes is from two days to a week. According to Dr. Carey, the herpes virus is spread from one person to another by direct contact, either by skin to skin or contact between mucous membranes. Dr. Carey stated that the fact that a multitude of herpes blisters was found on the victim’s labia was not inconsistent with her allegations of anal intercourse because that area is the perfect environment for the blisters to multiply and |Rspread very rapidly. While Dr. Carey agreed that, in theory, a person could contract herpes by using ah infected' person’s towel or washcloth, he opined that such a situation was extremely unlikely. Dr. Carey testified that he has not ever seen any support for such a theory of transmission.

Analysis

Our review of the record leads us to conclude that the evidence, viewed in the light most favorable to upholding the jury’s verdict as required by Jackson v. Virginia, supra, was sufficient to support the jury’s conclusion that defendant was guilty of every essential element of the offense of aggravated rape. The prosecution introduced undisputed evidence .as to the defendant’s and victim’s ages at the time of the offense. Direct evidence in this case included the testimony of the victim, which alone would have been sufficient to convict defendant. See State v. Ponsell, supra. The victim clearly and unequivocally identified defendant in court as the person who put his penis “in her butt.” See State v. Rives, supra; State v. Thom *1209 as, supra; State v. Free, supra; State v. Standifer, supra. The victim’s testimony was corroborated by expert testimony that the victim contracted genital herpes from sexual contact with an infected individual. It was stipulated that defendant had tested positive for genital herpes. Defendant’s hypothesis that the 9-year-old victim could have contracted herpes from bath linens was rejected by the jury. We cannot question this conclusion. This assignment of error is without merit.
| siRemarks Made by Prosecutor During Closing Arguments
According to defendant, the trial court committed error when it failed to admonish the jury following the remark made by the prosecutor during closing argument to the effect that defendant had not returned home “to this date.” Defendant submits that this statement led the jury to believe that he had not returned home for three years, and was deliberately made inasmuch as the state knew that defendant had been in custody for that entire period of time. When defense counsel made a motion that the jury be admonished, the trial court denied the request. Because the trial court failed to fashion an adequate remedy, defendant’s right to a fair trial was “fatally tainted.”

Applicable Legal Principles

La. C. Cr. P. art. 771 provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1)when the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2)when the remark of comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on the motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
La. C. Cr. P. art. 770 provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
lin(l) race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) the failure of the defendant to testify in his own defense; or
(4) the refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

*1210
Excerpts from State’s Closing Argument, including Objection and Admonishment

During the prosecutor’s closing argument, she commented that defendant knew the “gig” (sic) was up when Dr. McGehee examined the victim. The state continued:
Prosecutor: He. says, “well,’they didn’t call me to come pick them up.” So why didn’t he come home that night or the next night or the next night? Why is it 'that they did not see Alfred Hunter from the time he dropped them off at Green Clinic until yesterday? ‘Cause he’s innocent?
Defense: Your Honor, I’m going to object. May we approach? ■
[[Image here]]
The Court: You had an objection that you wished to make. Is that correct?
Defense: I do, Your Honor. Your Hon- or, Ms. Alford has argued to the jury that they should conclude that Mr. Hunter is guilty because once he dropped them off at Green Clinic, he didn’t go pick them up and he didn’t go home that night or the next night or the next night, and in fact has never gone home and they have never seen him until yesterday in court. My objection is Ms. Alford knows very well that Mr. Hunter has been in jail for over three years now on this charge. She knows he couldn’t possibly return home, and the impression she is giving the jury is that he has willingly not returned to that home because he believes himself guilty and that he was caught when they went to Green Clinic.
I^The Court: All right. What is your proposed, remedy?
■Defense: I would ask that you instruct the jury to disregard any reference that has been made to Mr. Hunter not returning to that home.
The Court: Does either side have an objection to the Court instructing the jury to disregard any inference that he has not willingly referred — returned to the home since the date of arrest?
Prosecutor: No, Your Honor.
Defense: Your Honor, I do.
Prosecutor: He was arrested on May 23, by the way.
Defense: There is no evidence of that before the jury. I mean, they don’t know that he wasn’t arrested until a year later. All they can. — ■
The Court: Well, I think that the testi- . mony was from Officer Jenkins that after the lab reports had been completed that he was then arrested, which the impression .1 had — and I know nothing about this case prior to hearing the testimony. The impression that I was left with was that approximately ten days to two weeks after the allegations arose, he was taken into custody, and I cannot put my finger on exactly who said what, but that’s been the general tenor of the testimony. So I will give any instruction that does not mislead the jury and is accurate of the facts, which means that I would suggest that the instruction be that they should disregard any inference that he has not — that he chose willingly not to return to the residence from ... and you give me the date of the arrest and I’ll give them that date, but I don’t know how else I can repair it. I am open to hearing some other method, but that’s accurate insofar as the facts are concerned and removes the implication that you’re concerned about.
Defense: Your Honor, I don’t recall Officer Jenkins testifying as to the date of arrest. I just don’t recall that.
*1211 The Court: No. But he did testify that after the lab reports came in that he then took him into custody or at least after the doctor had done the examination that there was — and it |12doesn’t have to be a specific date necessarily because the date was not testified to, but I’d certainly give them that instruction.
Defense: I still think it’s misleading, Your Honor, and I think it is too prejudicial to the defendant.
The Court: All right. The objection would be noted. Do you have a specific, again, wording for an instruction that you want?
Defense: That the jury be instructed to disregard any argument or reference to the fact that Mr. Hunter willingly refused to return to that home after May 9.
The Court: All right. That would be an — -that would not be a truthful statement to the jury, and accordingly, I can’t give that, because he was not in custody until sometime later. I will give an instruction that they are to disregard any inference that he’s willingly absent or had no contact with the Hollands after the report was received from the doctor. That’s the best I can do.
Defense: Thanks Your Honor. We’d ask that our objection be noted. Your Honor, are you going to give that instruction before we proceed?
The Court: Yes, sir.
[[Image here]]
(The following proceedings were had in the presence and hearing of the jury.)
The Court: The record should note that all twelve persons on the jury are now seated in the jury box and the two alternatives are there as well. Ladies and gentlemen, you are to disregard any reference made by Ms. Alford or any inference that you may draw therefrom that Mr. Hunter had no contact with the Hollands, ... after the receipt of medical information from the physicians. You may proceed.
Prosecutor: Thank you, Your Honor. Alfred Hunter told Yolanda to take [victim] to Dr. McGehee on May the 9th. He dropped them off. He failed to pick them up. He failed to come home. He didn’t come home that night, the next night, the next night, the next night, the next night....
11sDefense: Your Honor, I’m going to object. Your Honor....
(Here followed a discussion off the record.)

Analysis

Initially, this court notes that appellate defense counsel has misstated some of the facts pertaining to her argument on this issue. In brief, she correctly asserted that, following a defense objection, a request was made that the jury be admonished. She inaccurately states, however, that the trial court denied this request. A clear reading of the transcript excerpts quoted above reflects that trial counsel’s request for an admonishment was granted; the judge simply refused to give the exact admonishment requested by defense counsel inasmuch as it was an inaccurate statement of the facts presented at trial. Defendant’s attorney asked that the jury be instructed to disregard any reference to the fact that defendant willingly refused to return to the home after May 9th. The trial court refused, because defendant was not taken into custody until sometime later. The admonishment given by the trial court was that the jury disregard any inference that defendant willingly had no contact with the victim and her mother *1212 after receipt of medical information from the pediatrician.
In the instant case, the comments made by the prosecutor do not fall within the provisions of La. C. Cr. P. art. 770 and thus an automatic mistrial was not warranted. The record reveals that the trial court complied with La. C. Cr. P. art. 771. Upon the request of defendant, the trial court immediately admonished the jury to disregard the remarks made by the prosecuting attorney during closing argument as irrelevant or immaterial. 114There is no indication in the record that these comments influenced the jury or contributed to their verdict in any way. See State v. Green, 416 So.2d 539 (La.1982); State v. Uloho, 04-55 (La.App. 5th Cir.05/26/04), 875 So.2d 918. This assignment of error lacks merit.

Conclusion

For the reasons set forth above, defendant’s conviction and sentence are AFFIRMED.

. La. R.S. 14:41 and 42 were among the statutes amended by Acts 2001, No. 301, § 1, which in part added oral sexual intercourse to the crimes of rape and aggravated rape.