MAX N. TOBIAS, JR., Judge.
 

 | ;On 7 May 2010, the defendant, Robert L. Turner (“Turner”), was charged with second-degree battery. He entered a plea
 
 *1246
 
 of not guilty. Turner’s counsel filed motions to suppress the evidence, the statement, and the identification; the district court denied the motions to suppress the statement and the identification and found probable cause to hold Turner for trial. On 30 September 2010, the jury found Turner guilty as charged. On 17 February 2011, counsel for Turner filed motions for a new trial, to quash the multiple bill of information, and to reconsider the sentence, all of which were denied the following day. Turner was adjudicated a multiple offender. He was sentenced to serve ten years at hard labor with credit for time served and concurrent with any other sentence. His motion for an appeal was granted.
 

 On 27 February 2010, at 3002 America Street in New Orleans, Sandra Green (“Green”) invited some friends over for a birthday party Green’s granddaughter. The guests included Turner (Green’s stepson), the victim, Morris Young (“Young”); and Young’s girlfriend, Michelle Patterson (“Patterson”). During a card game a dispute arose when Young accused Turner of taking a twenty dollar bill placed on the table by Patterson. Patterson corrected Young and told him that | ¡¡the money was not her money. Young apologized to Turner. It appeared that the dispute was over. At approximately 11:00 p.m., Young and Patterson prepared to leave the house. They exited down the stairs at the rear of the house and Turner was standing at the base. As Young reached the base of the stairs, Turner, unprovoked, punched Young in the face. Young fell to the ground unconscious. Turner continued to beat Young and then fled the scene. An ambulance was called, and Young was transported to Touro Infirmary where he was placed in the intensive care unit. Young’s injuries included a broken jaw, a fractured skull, bleeding in his brain, a fractured hip, memory loss, and severe headaches.
 

 New Orleans police were also called to the scene. Patterson told the responding officers that she thought that Young had been robbed. Subsequently, Detective Andrew Packer of the New Orleans Police Department investigation led him to interview Patterson. In a recorded interview Patterson described Turner and told Detective Packer that defendant was the person who struck Young. Based upon that information, the detective compiled a photographic line-up. Patterson positively identified Turner as the person who struck Young. Detective Packer also interviewed Green, who corroborated that Turner was the person who struck Young.
 

 Turner was subsequently arrested. He initially denied that he had struck Young. After Detective Packer informed him that witnesses had identified him as the attacker, Turner admitted that he struck Young, but claimed that he only struck him one time. At trial, Patterson and Green positively identified Turner as Young’s attacker. Young testified that Turner was the person with whom he had had a verbal dispute during the card game at Green’s house on the night of the attack.
 

 | ¾A review for errors patent reveals none. We do note, however, that Turner filed a post-judgment motion of acquittal (La.C.Cr.P. art. 821) on 17 February 2011. Although the minute entries of the court reflect no ruling on the motion, a review of the transcript of the multiple bill/sentencing hearing held on 18 February 2011 that the trial court simultaneously overruled the motion and the defendants motion for new trial. The transcript controls over the minute entry.
 
 State v. Jackson,
 
 08-0286, p. 4 (La.App. 4 Cir. 4/29/09), 11 So.3d 524, 529, citing
 
 State v. Hall,
 
 99-2887, p. 17 (La.App. 4 Cir. 10/4/00), 775 So.2d 52, 63.
 

 
 *1247
 
 By his sole assignment of error Turner asserts that the trial court erred by allowing the prior recorded statement of Patterson to be played for the jury. He contends that when the statement was introduced and played for the jury, there had not been an express or implied charge made against Patterson by the defense that she was not credible, she had fabricated her testimony, or her motive in testifying had been placed at issue.
 

 La. C.E. art. 801 defines “hearsay” as “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.”
 

 La. C.E. art. 801 D(l)(b) provides that a prior consistent statement of a witness is admissible “to rebut an express or implied charge against him of recent fabrication or improper influence or motive.” Such a statement is not hearsay.
 

 In
 
 State v. Thomas,
 
 30,490 (La.App. 2nd Cir.4/8/98), 711 So.2d 808 (a child rape case), the defense attorney during voir dire brought up the issue of whether the child was lying or had had things suggested to her. The state argued that it was entitled to bring witnesses forward to show that the child had testified consistently initially and in court. The court found that the trial court had not erred |4in overruling the defense objection pursuant to La. C.E. art. 801 D(1)(b).
 
 See also State v. Jones,
 
 02-908 (La.App. 5 Cir.2/25/08), 841 So.2d 965.
 

 Prior to Patterson being called to testify by the state, the following colloquy occurred during the cross-examination of Detective Packer:
 

 [[Image here]]
 

 Q. Now, Detective, you became involved in this investigation, as you said, about five, four or five days after the incident occurred, correct?
 

 A. That sounds about right.
 

 Q. Okay. And you were [sic] first became aware of the investigation because the sister of Mr. Young contacted you; is that correct?
 

 A. Yes.
 

 Q. Okay. And it was at that point that you began contacting people that you believed were people at the party that perhaps witnessed this incident, correct? A. Right.
 

 Q. Okay. And Mr. Young’s sister gave you the name of Michelle Patterson, who is the fiancée or girlfriend of Morris Young, correct?
 

 A. Yes.
 

 Q. Okay. And Michelle Patterson, herself, had never tried to contact you? You had only tried to contact her; is that correct?
 

 A. To the best of my knowledge, no, I don’t think she ever tried to contact me. I contacted her.
 

 [[Image here]]
 

 Q. Okay. And, prior to you contacting Michelle Patterson and speaking with Ms. Green, no person had come forward with any information with regard to this, this night; is that right?
 

 A. Right, that’s correct.
 

 [[Image here]]
 

 Q. Now, your presentation of the photo lineup to Michelle Patterson, that was in the presence of Morris Young; is that correct?
 

 A. No. No, it wasn’t.
 

 IsQ. And Ms. Patterson told you that she had known Mr. Turner before; is that correct?
 

 A. I’m—
 

 Q. Ms. Patterson knew Mr. Turner before that night; is that correct?
 

 
 *1248
 
 MR. DALY: I’m going to object to hearsay.
 

 THE COURT: Sustained.
 

 * * *
 

 Undoubtedly, defense counsel, in anticipation of Patterson’s testimony for the state, directed the above questions to Detective Packer to imply to the jury that Patterson may not have fully cooperated with the initial investigation, thereby questioning her credibility and motives. The fact that defense counsel knew that Patterson told the responding officers that she initially thought that Young had been robbed, implying that Turner was not the attacker and that she initially lied to the police, is evidenced by the following questions on cross-examination:
 

 * * *
 

 Q. Okay. Now, police did come to the house that night, correct?
 

 A. Yes.
 

 Q. And they actually talked to you?
 

 A. Yeah.
 

 Q. And you never told them about who hit Morris, correct?
 

 A. Yes.
 

 Q. Okay. And, in fact, when you all— when you were, you and Morris were leaving, you were actually still upstairs talking?
 

 A. No, I was on the stairs.
 

 Q. Now, earlier you stated that you thought he was being robbed?
 

 A. That’s the first, yes—
 

 IsQ- Okay.
 

 A. —thing to come to my mind.
 

 Q. And you said — but you realized that he wasn’t being robbed because he had all his stuff on him, right?
 

 A. Yes.
 

 Q. So that meant — so you didn’t really see what happened, right, Ms. Patterson?
 

 A. Yes, I did_ I seen [sic] what happened.
 

 [[Image here]]
 

 Q. Okay, Now, Ms. Patterson, when Mr. Young came to in the hospital he actually said, “My brother did it.”
 

 A. Yes.
 

 Q. And to the best of your knowledge, Robert Turner is not his brother, correct?
 

 A. Correct.
 

 [[Image here]]
 

 In the instant case, defense counsel laid the ground work for attacking Patterson’s subsequent testimony by the questions he asked Detective Packer. Patterson’s prior recorded statement was consistent with her trial testimony. Applying the reasoning in
 
 Thomas and Jones
 
 and La. C.E. art. 801 D(l)(b), we find no error in the trial court’s ruling admitting Patterson’s prior recorded statement to Detective Packer.
 

 Even assuming that Patterson’s prior recorded statement constituted hearsay under La. C.E. art. 801 D(l)(b), a recorded recollection may still be admitted pursuant to the hearsay rule. La. C.E. art. 808(5) provides:
 

 A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and 17accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence and received as an exhibit but may not itself be taken into the jury room. This exception is subject to the provisions of Article 612.
 

 La. C.E. art. 612 B states:
 

 
 *1249
 
 In a criminal case, any writing, recording, or object may be used by a witness to refresh his memory while testifying. If a witness asserts that his memory is refreshed he must then testify from memory independent of the writing, recording, or object. If while testifying a witness uses a writing, recording, or object to refresh his memory an adverse party is entitled, ..., to inspect it, to examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.
 

 During direct examination by the state, Patterson had trouble recalling certain facts about the incident as evidenced by the following colloquy:
 

 Q. Can you recall who all was outside when he was attacked?
 

 A. No, I can’t recall who all was out there. Miss [Sandra Green] was, I know, because we was [sic] walking down the stairs together and I was clowning with her. We was [sic] just clowning around.
 

 [[Image here]]
 

 Q. Did you ever talk to a detective about this incident?
 

 A. Yes, I did.
 

 Q. And how did you end up talking to him?
 

 A. Because in the hospital — in the hospital — these people — I can’t recall. I think — I’m trying to remember because I believe — well, I know in the hospital, sometime, I met him in the hospital at Touro.
 

 [[Image here]]
 

 Q. Did he ever have the occasion to show you a photographic lineup?
 

 A. Yes, he did.
 

 IsQ. If you saw that lineup would you recognize it today if I showed you a copy?
 

 A. Of the — of everyone who was on that picture, you asking?
 

 Q. If I just showed you the sheet that he showed you, would you recognize it? A. I don’t know.
 

 [[Image here]]
 

 [The prosecutor is then allowed to show Patterson the photographic lineup.]
 

 Q. What do you recall as far as what the detective told you before he showed you that?
 

 A. He had say [sic] that if — he was going to show me a picture — well several pictures — and ask me could I, could I identify the person. And that’s what he said. And then he showed me the pictures.
 

 Q. And did you identify anybody?
 

 A. Yes, I did.
 

 Q. Okay. And how do you know that you identified him?
 

 A. Uh?
 

 Q. How do you know that you identified somebody by looking at that?
 

 A. How do I know?
 

 Q. Did you sign anything?
 

 [[Image here]]
 

 A. Did I sign anything?
 

 MR. DALY:
 

 Yeah.
 

 THE WITNESS:
 

 I don’t recall.
 

 [Patterson’s prior recorded statement was admitted and played.]
 

 ⅜ *
 

 Q. Ms. Patterson, was that statement true and accurate to the best of your recollection?
 

 A. Yeah. Yes.
 

 
 *1250
 
 The record reflects that Patterson was having trouble recalling some of the facts surrounding the incident and her subsequent identification of Turner as the attacker. The admission of her prior consistent recorded statement falls within the ambit of La. C.E. art. 912 B and does not constitute inadmissible hearsay.
 

 If we were to conclude that the trial court erred in admitted Patterson’s prior recorded statement, the trial court’s actions amounted to no more than harmless error that would not have changed the outcome of the trial. Our law and jurisprudence recognize that a trial error does not provide grounds for reversal of a defendant’s conviction and sentence unless it affects substantial rights of the accused. La C.Cr.P. art. 921;
 
 State v. Johnson,
 
 94-1379, pp. 16-17 (La.11/27/95), 664 So.2d 94, 101-02. The test is whether a reasonable possibility exists that the error might have contributed to the conviction and whether the court can declare the error is harmless beyond a reasonable doubt.
 
 State v. Juniors,
 
 03-2425, p. 54 (La.6/29/05), 915 So.2d 291, 331. The reviewing court must find that the verdict actually rendered was surely not attributable to the error.
 
 Johnson,
 
 94-1379, pp. 16-17, 664 So.2d at 101—02.
 

 In this case, our review of the record indicates that the Turner’s conviction rests on sufficient evidence even in the absence of the admission of Patterson’s prior recorded statement to Detective Packer; that is, the admission Patterson’s prior recorded statement to Detective Packer did not affect the verdict. The jury heard the consistent testimony of two state’s witnesses that Turner struck and |inbrutally beat Young as he lay unconscious on the ground. Detective Packer testified that Turner, following his earlier denial, admitted to striking Young, but once. Clearly, the jury rejected Turner’s attempt to mitigate his guilt.
 

 The assignment of error is without merit.
 

 CONCLUSION:
 

 We affirm Robert L. Turner’s conviction and sentence.
 

 AFFIRMED.